Sherrie TAYLOR, Appellant,

v.

CHRISTUS SPOHN HEALTH SYSTEM CORPORATION, d/b/a Christus Spohn Hospital Shoreline, Team Health Southwest, L.P., Arthur G. Wright, Jr., M.D., Coastal Cardiology Association, Charles J. Schecter, M.D., Raymond H. Graf, M.D. a/k/a Ray Graf, M.D., Appellees.

No. 13–03–368–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

July 29, 2004.

Rehearing Overruled Aug. 30, 2005.

Cage Wavell, Corpus Christi, for appellant.

William A. Abernethy, John S. Langley, Meredith, Donnell & Abernethy, Clay E. Coalson, Donnell & Abernethy, Thomas F. Nye, Douglas M. Kennedy, Brin & Brin, P.C., Corpus Christi, for appellees.

Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice GARZA.

Sherrie Taylor appeals from the decision of the trial court to grant a motion to dismiss her cause of action for medical malpractice based on the inadequacy of her expert report. Because the trial court did not abuse its discretion in determining that Taylor's expert report failed to comply with the statutory requirements established by the Medical Liability Insurance Improvement Act,[1] we affirm.

Taylor, individually and as heir and representative of the estate of Ronald C. Taylor, deceased, brought suit against appellees, Christus Spohn Health System d/b/a Christus Spohn Hospital Shoreline, Team Health Southwest, L.P., Arthur G. Wright Jr., M.D., Coastal Cardiology Association, Charles J. Schecter, M.D., and Raymond H. Graf, M.D. Taylor alleged that the death of her husband, Ronald, was due to appellees' negligence in failing to manage and timely and accurately diagnose Ronald's cardiac condition and in failing to perform tests necessary to diagnose and recognize Ronald's condition. In compliance with article 4590i, section 13.01 of the Texas civil statutes, Taylor filed an expert report by James Watson, M.D., accompa-

---

1. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986 (former Tex.Rev.Civ. Stat. Ann. art. 4509i § 13.01) (repealed 2003) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon Supp. 2004)).

nied by Dr. Watson's curriculum vitae. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2004).[2]

The defendants filed a motion to dismiss based on Dr. Watson's expert report. The trial court granted their motion after a hearing.[3] Taylor now brings this appeal alleging that the trial court abused its discretion by granting the motion to dismiss. Specifically, Taylor argues that she demonstrated the required good faith effort to show compliance with the requirements of article 4590i, section 13.01. Appellees respond that the report was conclusory and that it improperly grouped all the defendants together, thereby failing to specifically address the standard of care and breach of duty with respect to each defendant.

### Applicable Law and Standard of Review

In order to bring a medical malpractice claim, a plaintiff must comply with the requirements for filing an expert report. Under the statute applicable at the time this report was filed, a claimant had to provide for each physician or health care provider one or more expert reports within one hundred and eighty days of filing a health care liability claim. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 (repealed 2003).[4] An expert report is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

When presented with an expert report, the trial court must determine whether it represents a good faith effort to comply with the statutory definition of expert report. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001). The statute requires that the report include a fair summary of the expert's opinions for each defendant. *Palacios*, 46 S.W.3d at 878. If the court finds, after a hearing, that the report does not represent a good faith effort to comply with the statute, the court shall "grant a motion challenging the adequacy of [the] expert report." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). Although an expert report does not need to marshal and present all the plaintiff's proof of malpractice, it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. Essentially, the report must: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879. A report that merely states the expert's conclusions about each element (standard of

---

2. Taylor filed her report in March of 2003. At the time, section 13.01 of article 4509i established the statutory requirements for expert reports. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985 (repealed 2003). Article 4590i was repealed in September of 2003, and the requirements for filing an expert report now appear in section 74.351 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351.

3. Taylor filed a motion requesting that she be granted an additional thirty days in order to file a compliant expert report. The trial court denied this motion after a hearing, a decision that Taylor has not appealed to this Court.

4. Under the current version of the statute, a claimant has one hundred and twenty days to file this report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a).

care, breach, and causation) does not fulfill these purposes. *Id.*

An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard and how that breach caused or contributed to the cause of injury. *See Eichelberger v. St. Paul Med. Ctr.*, 99 S.W.3d 636, 638 (Tex.App.-Dallas 2003, pet. denied) ("the expert report must provide, for each defendant, a fair summary of the expert's opinions with respect to ... standard of care, breach of that standard and causation."); *Wood v. Tice*, 988 S.W.2d 829, 831 (Tex.App.-San Antonio 1999, pet. denied) ("The report must specifically refer to the defendant and discuss how that defendant breached the applicable standard of care."). Collective assertions of negligence against various defendants are inadequate. *See, e.g., Doades v. Syed*, 94 S.W.3d 664, 671–72 (Tex.App.-San Antonio 2002, no pet.) (expert report inadequate because it failed to set forth standard of care for each defendant individually and contained mere conclusions regarding breach and causation); *Rittmer v. Garza*, 65 S.W.3d 718, 722–23 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (expert report inadequate because it referred to defendants collectively and did not explain causal relationship between each defendant's individual acts and injury); *Whitworth v. Blumenthal*, 59 S.W.3d 393, 396 (Tex.App.-Dallas 2001, no pet.) ("the report ... does not identify any particular defendant to which it applies and instead generally asserts 'the health care providers' failed to meet the standard of medical care.").

We review the trial court's ruling on the adequacy of an expert report under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 877; *Doades*, 94 S.W.3d at 671. Under this standard, the appellate court may not disturb the trial court's resolution, even if the appellate court would have decided differently, unless the resolution is shown to be arbitrary and unreasonable. *Doades*, 94 S.W.3d at 671; *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court's resolution of a factual issue is arbitrary and unreasonable if the appellant establishes that the trial court could reasonably have reached only one decision. *Doades*, 94 S.W.3d at 671.

### Analysis

Taylor asserts that the expert report she submitted adequately fulfilled the requirements of article 4590i, section 13.01. Appellees argue in response that the report was inadequate because it lumped all of them together, failed to delineate what each individual party was supposed to do, and failed to identify how each failed to perform. Appellees also allege that the report is conclusory with regard to negligence and causation.

Dr. Watson's expert report opined generally that:

> [T]he cause of death in the case of Ronald Clayton Taylor was myocardial infarction due to coronary artery disease and ... his death, more likely than not, would have been avoided had the patient undergone diagnostic cardiac imaging and cardiac catheterization prior to his demise, as should have been done, but was not done. The failure to diagnose and treat this condition was negligence by Dr. Wright (ER Physician), Team Health Southwest, L.P., Coastal Cardiology, Charles Schecter, M.D. (cardiologist), Raymond Graf, M.D. (cardiologist), and Spohn Hospital Shoreline Emergency Room, and that negligence was a proximate cause of the injury and death of Ronald Clayton Taylor.

The report goes on to describe what occurred when Ronald came to the emergency room at Spohn Hospital complaining of chest pains.

Ronald was apparently examined in the emergency room by Dr. Wright and sent to the cardiologist without being discharged. Dr. Watson asserts that it was negligent of Dr. Wright, Team Health Southwest, and Spohn Hospital to fail to complete discharge procedures and patient education with Ronald before sending him to cardiology. He does not, however, present the standards of care relevant to each of the three different parties. Dr. Watson further asserts that such negligence was a proximate cause of Ronald's death. However, he fails to explain what each of these three parties should have done and what they failed to do. This portion of the expert report fails to meet the standard because it is both conclusory in nature and fails to specify each defendant's individual negligent conduct. *See Palacios,* 46 S.W.3d at 879.

In the next paragraph of the report, Dr. Watson discusses the interaction between the various doctors and asserts that the standard of care required effective communication between the various care providers regarding the patient's condition. He concludes without further explanation:

> In the case of Ronald Clayton Taylor, such communication was not effectively achieved and as such was negligent and below the ordinary standard of care and this negligence was a proximate cause of the death of Ronald Clayton Taylor. Specifically, there is no record of the patient's chart accompanying him to the consultative appointment.

Dr. Watson names all six appellees as having failed to meet this standard of medical care.

Again, this portion of the report does not meet the statutory requirements for expert opinions, as Dr. Watson fails to address the standard of care for each defendant and how each defendant failed to meet such standard. He does not explain which defendant should have communicated information about Ronald's condition, or to whom the information should have been directed, nor does he explain who should have been responsible for transmission of Ronald's chart to cardiology. *See Rittmer,* 65 S.W.3d at 722–23. Dr. Watson also fails to explain how the failure to achieve effective communication was a proximate cause of Ronald's death; he asserts that the information should have been included on Ronald's assessment prior to his undertaking an exercise stress test administered by a cardiologist, but does not explain how, if at all, this information would have altered the outcome of the cardiology assessment and stress test, and, further, how any of this relates to the cause of Ronald's death. *See Palacios,* 46 S.W.3d at 879.

At the end of the report, Dr. Watson asserts that, given Ronald's patient history, the standard of care requires that diagnostic imaging be undertaken to assess the presence of existent myocardial damage and that an eight-to-twelve-hour period of assessment should have elapsed prior to discharge in order to have definitively determined whether there was a need to proceed with cardiac catheterization. He notes that this was not done for Ronald and concludes, "[a]s such the care of Dr. Wright (ER Physician), Team Health Southwest, L.P., Coastal Cardiology, Charles Schecter, M.D. (cardiologist), Raymond Graf, M.D. (cardiologist), and Spohn Hospital Shoreline Emergency Room was negligent, and this negligence was a proximate cause of the death of Ronald Clayton Taylor." This portion of the report fails to state what each defendant should have done in order to meet the standard of care, what each defendant failed to do, and how

such failure led to Ronald's death. *See id.* Dr. Watson simply states that various procedures that should have occurred did not, without specifying which party was responsible for undertaking which procedures. The parties he lists include an emergency room physician, a hospital, and a cardiology association, among others, each of which owed different duties to the deceased; however, Dr. Watson presents only a single standard of care and asserts that it is equally applicable to all parties involved.

Under our appellate standard of review, we may not reverse a trial court's determination regarding an expert report unless that determination is clearly arbitrary and unreasonable. *See Doades,* 94 S.W.3d at 671. Having reviewed the expert report provided by Taylor, we find it was not an abuse of discretion for the trial court to conclude that the report did not represent a good faith effort to comply with section 13.01(r)(6). *See Palacios,* 46 S.W.3d at 880. Thus, the trial court did not err in dismissing the case. Accordingly, we affirm.