NO. 07-06-0414-CR


NO. 07-06-0415-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



FEBRUARY 2, 2007



______________________________




JOHANSON LEE WATSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NOS. 9479 & 9480; HONORABLE TOM NEELY, JUDGE (1)



_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND


 Proceeding pro se, Appellant Johanson Lee Watson perfected these appeals from
the trial court's orders denying his motion for forensic DNA testing. On November 16,
2006, this Court abated these appeals and remanded the causes to the trial court to
determine whether Appellant was entitled to appointed counsel pursuant to article 64.01(c)
of the Texas Code of Criminal Procedure. Per this Court's directive, the trial court
conducted a hearing and entered an order on December 6, 2006, appointing Earl Griffin
to represent Appellant in prosecution of these appeals. The order was included in a
supplemental clerk's record filed with the Clerk of this Court on December 12, 2006.

 On January 11, 2007, Appellant presented to this Court his pro se "Motion for Leave
to Abate this Appeal and Remand the Cause for Futher [sic] Proceeding." On February 1,
2007, he also presented his pro se "Motion for Leave for Abate this Appeal and Remand
The Cause for Appointment of New Counsel" and "Motion for Leave Appointment of
Another Counsel to Pursue the Appeal Proceeding." These pro se motions were filed in
response to a copy of a letter from Griffin's legal secretary to the Clerk of this Court
indicating Griffin had ceased representing Appellant. (2) In his motions, Appellant expresses
his desire not to represent himself but requests that the trial court substitute appointed
counsel due to "friction" between himself and Griffin. As such, Appellant's pro se motions
amount to a request that this Court discharge Griffin and appoint new counsel. 

 Two problems prevent this Court from addressing Appellant's motions. One,
because Appellant is represented by counsel, (3) this Court will not consider nor take action
on any motions, documents, or correspondence filed by a pro se litigant. Ex Parte Taylor,
36 S.W. 3d 883, 887 (Tex.Crim.App. 2001). Secondly, although this Court may permit an
attorney to withdraw from representing a party in the appellate court, (4) it does not have the
authority to appoint substitute counsel. The trial court has the exclusive responsibility for
appointing counsel to represent indigent defendants, even after the appellate record has
been filed. Tex. Code Crim. Proc. Ann. art. 1.051(d) (Vernon 2005). See also Enriquez v.
State, 999 S.W.2d 906, 907 (Tex.App.-Waco 1999, no pet.); Springer v. State, 940
S.W.2d 322, 323 (Tex.App.-Dallas 1997, no pet.). 

 It should be noted, however, that a defendant does not have the right to choose his
own appointed counsel. Unless he waives his right to counsel and elects to proceed pro
se, or otherwise shows adequate reason for the appointment of new counsel, he is not
entitled to discharge his counsel but must accept the counsel appointed by the trial court. 
Thomas v. State, 550 S.W.2d 64, 68 (Tex.Crim.App. 1977). Adequate reason for the
discharge of counsel and appointment of new counsel rests within the sound discretion of
the trial court. Carroll v. State, 176 S.W.3d 249, 255 (Tex.App.--Houston [1st Dist.] 2004,
pet. ref'd). Furthermore, the trial court is under no duty to search until it finds an attorney
acceptable to an indigent defendant. Malcom v. State, 628 S.W.2d 790, 791
(Tex.Crim.App. [Panel Op.] 1982). Accord Camacho v. State, 65 S.W.3d 107, 109
(Tex.App.-Amarillo 2000, no pet.). 

 In those circumstances where the appointment of substitute counsel may be an
issue, an appellate court, when faced with a motion to withdraw, should abate the
proceeding to the trial court for determination. Although an appropriate motion to withdraw
has not been presented to this Court, we are left to speculate as to what action the
Appellant or counsel might take. Without considering the merits of the Appellant's pro se
motion, and to avoid any conflict of interest and further expenditure of judicial resources,
we consider it prudent to resolve the issue of appointed counsel now rather than invite
future litigation by a post-conviction collateral attack. See Lerma v. State, 679 S.W.2d 488,
493 (Tex.Crim.App. 1982). Thus, we now abate the appeal and remand the cause to the
trial court for further proceedings. 

 Upon remand the trial court shall utilize whatever means necessary to determine
whether Griffin should remain as Appellant's counsel; and, if not, whether Appellant is
entitled to new appointed counsel. If the trial court determines that there is no reason to
discharge Griffin and appoint substitute counsel, the court shall enter an order to that
effect. If the trial court determines that new counsel should be appointed, the name,
address, telephone number, and state bar number of newly appointed counsel shall be
included in the order appointing counsel. The trial court shall further cause its order to be
included in a supplemental clerk's record to be filed with the Clerk of this Court on or
before March 19, 2007.

 It is so ordered.

 Per Curiam

Do not publish.
1. Sitting by assignment.
2. The letter resulted from a misunderstanding during a telephone conversation
between Griffin's legal secretary and the appellate court clerk that Appellant was
proceeding pro se. 
3. An attorney appointed to represent an indigent defendant on appeal remains as the
appellant's attorney until the appeal is exhausted or the attorney is relieved of his duties
by an order of either the trial court or the appellate court. Tex. Code Crim. Proc. Ann. art.
26.04(j)(2) (Vernon Supp. 2006), Tex. R. App. P. 6.5 
4. Tex. R. App. P. 6.5.



injury. Palacios, 46 S.W.3d at 878.





Petition of Boone and COL


 In support of their contention that mandamus should issue to correct the trial court's
order denying their article 4590i, §13.01(e) motion, Boone and COL argue that Bush's
report (1) fails to state the standards of care applicable to a professional association and
a physician's assistant and fails to demonstrate that Bush is qualified to address the
standards of care applicable to those defendants; (2) fails to show a breach in the standard
of care by Boone and COL; and (3) fails to show a causal link between the care rendered
by Boone and COL and Stovall's injuries and death. 

Qualifications of Dr. Bush


 We first address Dr. Bush's qualifications to testify as to the standard of care
applicable to Boone and COL. The determination of his qualifications to provide an expert
report must be made on the basis of the contents of the report and his curriculum vitae.
Bowie, 79 S.W.3d at 52; Windisch, 138 S.W.3d at 511. Those documents reflect that
Bush has been licensed to practice medicine in Texas since 1983 and in Florida since
1990. He is board certified in Cardiovascular Diseases, in Interventional Cardiology, and
in Internal Medicine. At the time of the report, Bush was engaged in active practice as the
chairman of the Department of Cardiology at Cleveland Clinic Florida. His report states
that he "devotes the majority of [his] time to operative and post operative care, and [he]
regularly see patients under the circumstances described in this report." It further states
he averages seeing over 75 patients per week in clinic, and performs over 800 procedures
(450 interventions and 350 diagnostic procedures) per year, and that he is "familiar with
the standards of care and regularly provide and supervise care in connection with the
treatment of patients situated like Nancy Everett Stovall in terms of physicians, physician's
assistants, nurses, and hospitals." As noted, Boone is a physician's assistant supervised (7)
by Dr. Hurd who, like Dr. Bush, is a cardiologist. Relators do not here contend Bush is
unqualified to render an expert opinion on the standard of care applicable to Dr. Hurd. 
Bush's expert report and curriculum vitae contain information from which the trial court
could have concluded that Dr. Bush is competent to testify to the standard of care of a
physician's assistant in the same practice area. See Manor Care Health Services, Inc. v.
Ragan, 2006 WL 57355, *4 (Tex.App.-Houston [14th Dist.] Jan. 12, 2006, no pet.); Hall v.
Huff, 957 S.W.2d 90, 100 (Tex.App.-Texarkana 1997, pet. denied) (both stating a
physician is not disqualified from offering an opinion regarding nursing care simply because
he is a physician and not a nurse by profession). 

 Boone and COL next question whether Bush is qualified to testify as to the standard
of care applicable to COL, a professional association. In response, real parties in interest
argue that no expert report was required as to COL because their initial pleadings asserted
COL's liability only on a respondeat superior theory. COL replies that real parties'
amended pleadings allege COL has liability apart from respondeat superior and the plain
language of 4590i requires an expert report for each health care provider against whom
a claim is asserted. Section 24 of the Professional Association Act provides: "The
association . . . shall be jointly and severally liable with the officer or employee furnishing
professional services for such professional errors, omissions, negligence, incompetence
or malfeasance on the part of such officer or employee when such officer or employee is
in the course of his employment for the association." TEX. REV. CIV. STAT. ANN. art. 1528f,
§ 24. There is no suggestion that Dr. Hurd or Boone was acting outside the course of
employment in their treatment of Stovall. If either of them was negligent, COL has the
liability prescribed by the Professional Association Act. Battaglia v. Alexander, 177 S.W.3d
893, 901-02 (Tex. 2005). We have concluded Dr. Bush is qualified to testify to the
standard of care applicable to Boone, and, as noted, relators do not here challenge his
qualifications to testify to that applicable to Dr. Hurd. Therefore, Dr. Bush is qualified to
testify as to the standard of care applicable to COL. Id., TEX. REV. CIV. STAT. ANN. art.
1528f, § 24. 

 COL seems to suggest that regardless of whether Dr. Bush was qualified to testify
as to COL's vicarious liability, Dr. Bush is not qualified to testify as to COL's individual
liability and, thus, the Bush report is inadequate. We do not reach that issue because we
have concluded section 24 of the Professional Association Act imputes the alleged liability
of Dr. Hurd and Boone to COL and, therefore, dismissal of the case against COL is not
warranted based upon the qualifications of Dr. Bush. 

Standard of Care


 We turn to the question whether the Bush report adequately states the standard of
care applicable to Boone and COL. We conclude that it does. 

 Bush's report divides his discussion of the standard of care into two sections: the
first addressing the cardiologist Dr. Hurd, his physician's assistant Stacey K. Boone, their
practice group COL, the surgeons Dr. Thames and Dr. Pessa, and their practice group
CMG (denominated by Dr. Bush as the "physicians") and the second addressing the
hospital and its employees. The "physicians" section of the report begins: "The standard
of care for Howard P. Hurd, II, M.D., Cardiologists of Lubbock, P.A., Stacey K. Boone, P.A.,
Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and Covenant Medical Group, P.A.
(hereinafter "the Physicians") for pre-operative, operative, and post-operative anti-coagulation and anti-coagulation transition is well established." (emphasis in original). 
There follows a detailed discussion of the standard of care with respect to post-operative
anti-coagulation therapy in patients with a mechanical valve prosthesis, as applicable to
Stovall. 

 Relators contend the report does not identify a standard of care for a physician's
assistant like Boone. They are correct that the report does not separately set forth a
standard of care applicable to Boone. But we must agree with the real parties in interest 
that the report nonetheless states Dr. Bush's opinion concerning the standard of care
applicable to Boone. The report ascribes the same standard of care to Boone as to the
others included among the "physicians." 

 Relators elsewhere cite Taylor v. Christus Spohn Health System Corp., 169 S.W.3d
241 (Tex.App.-Corpus Christi 2004, no pet.), which affirmed a trial court's dismissal of the
plaintiff's claims against six defendants based on the inadequacy of the expert report. The
proffered expert report ascribed negligent conduct to some, and sometimes all six,
defendants, without explaining the standard of care required of the individual defendants. 
We do not find Taylor controlling here. The disparate defendants there included an
emergency room physician, a hospital, and a cardiology association which, the court noted,
"owed different duties to the deceased." Id. at 246. 

 All the individual defendants here were involved in the administration of Stovall's
post-operative anti-coagulation therapy. Bush's report states that the standard of care
applicable to all of them required, inter alia, (8) that they "recognize ongoing blood loss and
discontinue anti-coagulation in the presence of ongoing blood loss. Specifically, the
patient's labs revealed ongoing blood loss and a growing wound hematoma was
recognized. The standard of care required that the anti-coagulation be discontinued in light
of the patient's presentation." While relators may disagree with Bush's opinions
concerning the standard of care applicable to each of those individual defendants, the
report contains a fair summary of his opinions and adequately informs them of the specific
conduct called into question. Palacios, 46 S.W.3d at 879-80. We conclude the report fairly
summarizes the standard of care applicable to Boone and COL. Id.; TEX. REV. CIV. STAT.
ANN. art. 4590i, §13.01. 

Breach of the Standard of Care and Causation


 Boone and COL argue the Bush report fails to show their breach of the standard of
care and fails to show a causal link between the care rendered by them and Stovall's
injuries. With regard to causation, the expert's report must contain information linking the
harm to the alleged breach in a manner that is not merely conclusory. Bowie, 79 S.W.2d
at 53. The report states, in part:

 With regard to the manner in which the are [sic] rendered by the Physicians
failed to meet the standards, the initial decision to anti-coagulate the patient, the
dose of anti-coagulation that was used (Heparin and Coumadin), the decision to
keep the patient in the hospital beyond the initial 24 hours of observation, and the
failure to recognize and act appropriately on the falling hemoglobin in a post-operative patient with an expanding hematoma on anti-coagulation all represent
breaches of the standard of care. Further, the failure on the part of the Physicians
to insist that the anti-coagulation be discontinued after 24 hours with the wound
hematoma beginning and the hemoglobin falling represent additional breaches of
the standard of care. (9)


 Here again, in this case, the report adequately informs Boone and the other
defendants of the specific conduct the plaintiffs call into question. That the report includes
Boone and COL with her supervising physician Dr. Hurd and the other physicians does not
render its discussion of the alleged breaches inadequate. We find also that the Bush
report links the harm to the breach (10) in a manner that is not merely conclusory. Bowie, 79
S.W.2d at 53. We conclude the Bush report constitutes a good faith effort to inform Boone
and COL of the specific conduct called into question and provides a basis for the trial court
to conclude that the claims against Boone and COL have merit. Palacios, 46 S.W.3d at
879.


Covenant Medical Group


 CMG also raises the broad issue of whether mandamus should issue to correct
respondent's order denying relief to CMG on its article 4590i, § 13.01 motion. Specifically,
CMG argues the Bush report (1) does not adequately establish a basis upon which Dr.
Bush is qualified to address the standards of care applicable to CMG's related surgeons
and does not adequately address the standard of care applicable to a professional group,
(2) does not adequately identify how its duty was breached, and (3) does not adequately
demonstrate how the allegedly negligent medical care of CMG caused injury or damage.

Qualifications


 With respect to Bush's qualifications, CMG argues the report and attached
curriculum vitae may establish that Bush is a well-qualified cardiologist but "contains no
explanation as to how he is qualified to render opinions regarding the standard of care
applicable to a general surgeon." (11) In a review of the qualifications of one rendering a
section 13.01 report, the "issue is the specific subject matter and the expert's familiarity
with it." Hagedorn v. Tisdale, 73 S.W.3d 341, 350 (Tex.App.-Amarillo 2002, no pet.) (citing
Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)). Bush's report does not concern
Stovall's hernia surgery. The specific subject matter of the report is the management of
Stovall's post-operative anti-coagulation therapy and related care, particularly as it relates
to her history of aortic valve replacement. Bush's active medical practice encompasses
that subject matter. His report says he is familiar with the standard of care for physicians
"in relation to appropriate protocols for anti-coagulation and anti-coagulation transition" and
the statement is supported by the description of his practice, training and experience. 
(emphasis in original). We conclude he is qualified to testify to the standard of care
applicable to the physicians, including the surgeons with respect to their participation in the
management of that post-operative therapy and care. See Windisch, 138 S.W.3d at 512
(some standards of care applicable to multiple schools of practice); Blan v. Ali, 7 S.W.3d
741 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (practical knowledge of what is usually
and customarily done by other practitioners under similar circumstances may qualify
witness to testify).

 As with COL, our conclusion Bush is qualified to testify to the standard of care
applicable to Dr. Thames and Dr. Pessa in this context, mandates the conclusion the trial
court's denial of the motion to dismiss was not an abuse of discretion. TEX. REV. CIV.
STAT. ANN. art. 1528f, § 24; Battaglia, 177 S.W.3d at 901-02.

Standard of Care - Breach - Causation


 CMG contends Bush's report "says nothing about the standard of care applicable
to CMG. It simply lumps CMG in with other Defendant physicians, physician assistants and
professional entities.... [and] the Bush Report makes no effort to identify any particular duty
of care owed by CMG to this particular patient, how its duty, if any, was breached, and how
the alleged breach caused the decedent's injury." CMG also relies on Taylor, 169 S.W.3d
241 and cases cited therein. We disagree with CMG's contention. Just as with Boone and
COL, we find the report adequately addresses the standards applicable to the CMG
physicians who treated Stovall post-operatively, the manner in which Bush believes the
care fell below the standards and the resulting harm, and find that, in these circumstances,
the inclusion of the surgeons and the cardiology defendants in the same discussion of
those subjects did not render the report inadequate. (12) The trial court could have found the
report constitutes a good faith effort to inform CMG of the specific conduct called into
question and provides a basis for the trial court to conclude that the claims against CMG
have merit. Palacios, 46 S.W.3d at 879. 

Conclusion


 Because we conclude the trial court did not abuse its discretion in denying the
motions to dismiss of Boone, COL, and CMG, Walker, 827 S.W.2d at 839, we deny both
petitions for writ of mandamus.


 James T. Campbell

 Justice


 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. This original proceeding has been assigned cause number 07-05-0384-CV.
3. The mandamus record indicates that CMG has been treated in the trial court as
a professional association. The record also shows that CMG recently filed amended
pleadings indicating that it actually is not a professional association but a non-profit
healthcare corporation. We have not considered, and this opinion does not address, the
effect of such a change in CMG's organizational form.
4. This separate proceeding has been assigned cause number 07-05-0425-CV. This
opinion considers and decides both cause number 07-05-0384-CV and cause number 07-05-0425-CV. 
5. Plaintiffs, in their original petition, also sued Covenant Health System, Covenant
Health System d/b/a Covenant Medical Center, Sisters of St. Joseph of Orange, St. Joseph
Health System, Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and SWAT Surgical
Associates, L.L.P. The petitions before us challenge the adequacy of the expert report
only as to Boone, COL, and CMG.
6. The record before us does not include the order dismissing Dr. Thames from the
lawsuit, but we note that the Fifth Amended Original Petition does not include Dr. Thames
as a party defendant.
7. TEX. OCC. CODE ANN. §§ 204.202, 204.204.
8. The report also discusses other requirements of the standard of care applicable
to the physicians, including a standard requiring the timely recognition of kidney failure and
a standard requiring performance of a serum creatinine (a measure of kidney function)
before administering I.V. contrast for an abdominal CT scan. 
9. The report alleges other breaches, including inappropriate dosages of medication
and failure to recognize kidney failure.
10. The report states, in part: "With regard to the causal relationship between the
Physicians' failure to meet the standard of care and the injury, harm, and damages
suffered . . . it is uncontroverted that this patient's death was due to internal bleeding and
related complications (hemorrhagic shock and multi-system organ failure). The internal
bleeding and related complications directly resulted from the inappropriate use of anti-coagulants in the immediate post-operative period and the inadequate monitoring and
adjustment of the continued anti-coagulation. The failure on the part of the Physicians to
recognize a significant drop in the hemoglobin during the post-operative period while the
patient was receiving anti-coagulation medications allowed the patient to continue to bleed
which caused the hemorrhagic shock, multi-organ system failure and death." 
11. We know Dr. Thames was the surgeon who performed the surgery for Ms.
Stovall's right inguinal hernia, however, we cannot determine Dr. Pessa's practice area
from the record before us.
12. The report further addressed a specific allegation against Dr. Thames, stating,
"Moreover, Dr. Thames ordered an I.V. rate of 50 cc/hour which represented a further
breach in the standard of care, because the I.V. rate was insufficient."