Affirmed and Opinion filed February 19, 2008








Affirmed and Opinion filed February 19, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00545-CV

____________

 

MANSOUR SANJAR, M.D., AND TED W.
KRELL, M.D.,
Appellants

 

V.

 

AUGUSTINE TURNER, LIONEL COLEMAN,
SR., 

RONNIQUA D. COLEMAN, AND LAPORSCHA
COLEMAN, 

AS HEIRS AND REPRESENTATIVES OF THE
ESTATE OF KAREN YVETTE GREEN, Appellees

 



 

On Appeal from the 215th
District Court

Harris County, Texas

Trial Court Cause No. 2007-07422

 



 

O P I N I O N








This appeal pertains to a health care liability suit
brought by appellees, Augustine Turner, Lionel Coleman, Sr., Ronniqua D.
Coleman, and Laporscha Coleman, as heirs and representatives of the estate of
Karen Yvette Green (collectively Athe Colemans@), against
appellants Mansour Sanjar, M.D. and Ted Krell, M.D. (collectively Athe doctors@).  The doctors
contend in this interlocutory appeal that the trial court erred in denying
their motions to dismiss because the Colemans= expert report is
deficient.  Specifically, they claim the expert was not qualified to render an
opinion and the expert report was cumulative, vague, and conclusory as to the
standard of care and causation.  We disagree and affirm the trial court=s judgment.

I.  BACKGROUND

On December 2, 2004, Karen Yvette Green entered the
psychiatric unit of San Jacinto Methodist Hospital for suicidal ideation under
the care of Mansour Sanjar, M.D.  Green=s medical history
included, among other conditions, bronchial asthma and lower back pain.  As
part of the suicide watch, the nursing staff monitored Green every fifteen
minutes. 

On December 5, Green experienced back pain.  Dr. Ted Krell
saw her and prescribed hydrocodone.  Between December 5 and 7, Green developed
swelling in her legs (edema).  Dr. Jeb Johnson was notified of the edema on
December  7, at which time he also prescribed 50 mcg of fentanyl for Green=s back pain. 
Green=s other sedative
psychiatric medications, such as Seroquel, were continued.  

Over the next five days, Green continued to gain weight due
to the edema in her legs.  Dr. Johnson, Dr. Krell, and Dr. Sanjar each examined
her at some point during this period.  Dr. Sanjar added the sedative Haldol to
Green=s medications.  By
December 11, Green had gained over twenty pounds, had developed wheezing and
shortness of breath, and had become increasingly lethargic.  Dr. Beth Choby
examined Green on Saturday afternoon, December 11, noted Green had oral thrush,
and stated she would see Green again on Monday.  The hospital nursing staff
noted that Green=s increasing lethargy and sleepiness were
likely related to the medications. 








At 2:00 a.m. on December 12, 2004, Green complained of
indigestion.  At 6:45 a.m. she developed cardiac arrest and could not be
resuscitated.  The autopsy report showed Green had hypertensive cardiovascular
disease, increased size of the heart, bronchial asthma, fluid in the lungs, and
congestion of the liver.  The medical examiner concluded that the combined
toxicity of fentanyl and Seroquel caused Green=s death.  

The Colemans sued San Jacinto Methodist Hospital, Dr.
Sanjar, Dr. Krell, Dr. Johnson, and Dr. Choby,[1]
alleging that the hospital and doctors failed to (1) properly evaluate,
diagnose, monitor, and treat Green=s edema, (2)
properly monitor Green while she was on sedative psychiatric medication, (3)
properly monitor and treat Green=s adverse
respiratory conditions, and (4) properly monitor Green=s vital signs as
part of the suicide watch.  The Colemans claimed that negligence by the
hospital and the four doctors caused Green=s death.

Pursuant to Texas Civil Practice and Remedies Code section
74.351, the Colemans filed an expert report by Eric Hoffman, M.D., a board
certified physician of internal medicine.  Dr. Sanjar and Dr. Krell objected to
Hoffman=s expert report
and each filed motions to dismiss, which the trial court denied after
conducting a hearing.  On appeal, Dr. Sanjar and Dr. Krell contend in their
first issue that the trial court abused its discretion by requiring them to
provide extrinsic evidence regarding their objections to the adequacy of the
expert report.  The doctors argue in their second issue that the trial court
erred because as an internist, Hoffman is not qualified to render an expert
opinion on the standard of care applicable to them as psychiatrists.  Dr. Krell
further claims in his third and fourth issues that the trial court erred
because the report fails to segregate the defendants and Hoffman=s opinions on the
standard of care and causation are conclusory. 

II.  STANDARD OF REVIEW








We review a trial court=s ruling as to the
adequacy of an expert report under an abuse of discretion standard.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex.
2001).  A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner or without reference to guiding rules or principles.  See
Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).  Though we may not
substitute our judgment for that of the trial court in reviewing factual
matters or matters committed solely to the trial court=s discretion, the
trial court has no discretion in determining what the law is or in applying the
law to the facts.  See Walker v. Packer, 827 S.W.2d 833, 839B40 (Tex. 1992). 
Thus, a trial court=s failure to apply or analyze the law
correctly is an abuse of discretion.  Id. at 840.

III.  HOFFMAN=S QUALIFICATIONS








Section 74.351 of the Texas Civil Practice and Remedies
Code requires that health care liability claimants provide an expert report to
the defendants no later than 120 days after filing the original petition.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon
Supp. 2007).  A defendant may then file a motion challenging the adequacy of
the report, and the trial court Ashall grant@ the motion if it
appears that the report does not represent a good faith effort to comply with
the statutory definition of an expert report.  Id. ' 74.351(a), (l). 
The statute defines an
expert report as a written report by an expert that provides a fair summary of
the expert=s opinions as of the date of the report regarding the applicable standard
of care, the manner in which that standard was breached, and the causal
relationship between that breach and the injury, harm, or damages claimed. 
Id. ' 74.351(r)(6).  To qualify as an expert on whether the
defendant physician departed from the standard of medical care, the expert=s report and
curriculum vitae must demonstrate that the expert is a physician who was
practicing medicine at the time the claim arose, has knowledge of accepted
standards of medical care for the diagnosis, cure, or treatment of the illness,
injury or condition involved  in the claim, and is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards.  Id. ' 74.401(a) (Vernon 2005).  In determining
whether a physician is qualified on the basis of training or experience, the
court shall consider whether the physician is board certified or has other
substantial training in an area of medical practice relevant to the claim and
is actively practicing medicine in rendering medical care services relevant to
the claim.  Id. ' 74.401(c).  The trial court=s inquiry is
limited to the four corners of the report.  Palacios, 46 S.W.3d at 878. 

Hoffman asserts in his report that he is qualified on the
basis of his training and experience to offer an opinion regarding the
treatment of Green=s edema, respiratory distress, and back
pain.  Hoffman=s report and curriculum vitae reflect that he is board
certified in internal medicine, has been practicing medicine for over twenty
years, is familiar with the standard of care for asthmatic bronchitis, back
pain, edema of the leg, congestive heart failure, and suicide watches, and is
familiar with interpreting how autopsy results relate to the medical diagnosis
during a patient=s life.  Dr. Hoffman states that he formed
his opinions in this case from a review of Green=s medical records,
the autopsy report, his years of experience, his knowledge accumulated as
chairman of a medical records committee, and medical literature. 

In their second issue, Sanjar and Krell contend the trial
court erred in denying their motions to dismiss because Hoffman=s report fails to
establish that he is qualified to render an opinion about the standard of care
applicable to them in their roles as Green=s psychiatrists. 
The doctors argue that the Aaccepted standards of medical care@ language in
section 74.401(a)(2) should be developed with respect to the medical specialty
in question, and therefore Hoffman must demonstrate knowledge of what the
standard of care requires of a psychiatrist when presented with circumstances
similar to Green=s condition.  We disagree. 













Dr. Hoffman concluded in his report that an overdose of
fentanyl decreased Green=s respirations, and that the failure to
properly monitor Green in conjunction with her decreased respirations led to
her inability to breathe after she aspirated and resulted in her cardiac arrest
and death.  Hoffman further concluded that the failure to correctly diagnose
the cause of Green=s edema, cardiomyopathy, and bronchial
asthma contributed to her death.  Hoffman=s report and
curriculum vitae demonstrate that he is qualified to opine on the standard of care
applicable to physicians monitoring and treating edema, prescribing fentanyl
for back pain, and monitoring respiratory distress.  Hoffman=s report also
provides evidence that in caring for Green, Sanjar and Krell acted, at least to
some extent, in their capacity as medical doctors.  The report states that
Sanjar took Green=s medical history of bronchial asthma and
back pain upon her admission to the hospital.  Sanjar also prescribed Haldol,
which has sedative properties, for Green.  Krell prescribed hydrocodone for
Green=s back pain.  Both
doctors independently examined Green at some point during the five days leading
up to her death, the time frame when her edema, lethargy, and respiratory
problems continued to worsen.  We therefore conclude Hoffman was qualified to
render an expert opinion on the standard of care applicable to Sanjar and Krell
with respect to their participation in the treatment of Green=s edema, the
administration of fentanyl, and the monitoring of her increasing lethargy and
respiratory difficulties.[2]
 See In re Stacey K. Boone, P.A., 223 S.W.3d 398, 407 (Tex. App._Amarillo 2006, no
pet.) (holding cardiologist was qualified to render expert opinion as to
general surgeon=s care because opinion was on
post-operative therapy and surgeon participated in management of that therapy);
see also Broders v. Heise, 924 S.W.2d 148, 153B54 (Tex. 1996)
(holding medical expert must have sufficient expertise with regard to actual
subject because not every doctor is a qualified expert on every medical
question).  Accordingly, we conclude the trial court did not abuse its
discretion in denying the motions to dismiss on grounds that Hoffman was not
qualified to render an expert opinion as to Sanjar and Krell.  We overrule the
doctors= second issue.

IV.  SUFFICIENCY OF HOFFMAN=S REPORT 

Krell argues in his third and fourth issues that the trial
court erred in denying his motion to dismiss because Hoffman=s report
impermissibly groups all the defendant doctors under a single standard of care
and is conclusory as to causation.  We disagree and conclude the trial court
could have found that the report meets the statutory requirements. 

When considering a motion to dismiss under section 74.351, Athe issue for the
trial court is whether the report represents a good faith effort to comply with
the statutory definition of an expert report.@  Palacios,
46 S.W.3d at 878.  To constitute a Agood faith effort,@ the report must
provide enough information to fulfill two purposes: (1) it must inform the
defendant of the specific conduct the plaintiff has called into question and
(2) it must provide a basis for the trial court to conclude that the claims
have merit.  Id. at 879.  The expert must explain the basis for his
statements and link his conclusions to the facts.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002).  When a plaintiff sues more than one defendant, the expert report
must set forth the standard of care applicable to each defendant and explain
the causal relationship between each defendant=s individual acts
and the injury.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 74.351(a),
(r)(6).  Identifying the correct standard of care is essential because the
trial court cannot determine whether each doctor breached its duty without
specific information about what that particular doctor should have done
differently.  See Palacios, 46 S.W.3d at 880. 








In his report, Hoffman gives his opinion on three areasCedema, fentanyl
medication, and suicide watch.  With regard to Green=s edema, Hoffman
lists all the defendants by name and gives a detailed description of the
standard of care for diagnosing and treating edema.  He explains what the
doctors should have done but failed to do,[3]
how this affected Green=s medical condition,[4]
and that the failure to deliver the standard of care was a proximate cause of
Green=s death. 
Regarding the fentanyl medication, Hoffman states the standard of care for the
prescribing physician (Johnson), then cites all four defendant doctors by name
for their failure to properly prescribe and monitor the use of fentanyl. 
Hoffman describes how the fentanyl overdose caused depression of Green=s respirations and
concludes that the failure to monitor Green was a proximate cause of her death
after she aspirated.  Finally, Hoffman states the standard of care for the Aphysicians, nurses
and hospital staff@ monitoring a patient on suicide watch and
cites all the defendants by name for failing to properly monitor Green on the
suicide watch.  Hoffman states that the failure to monitor contributed to Green=s deteriorating
respiratory status and was a proximate cause of her death.  In his final
summary, Hoffman concludes:

Dr. Sanjar, Dr. [Johnson], Dr.
Krell and Dr. Choby fell below the standard of care in prescribing a larger
than required dose of [fentanyl] and that this led to the subsequent
exacerbation of breathing problems in relationship to the patient=s asthma problems
and congestion and that this was a proximate cause of the death and this fell
below the standard of care as outlined above and was therefore negligent.








According to Hoffman=s report, all the
defendant doctors participated in treating Green=s edema,
monitoring her fentanyl medication, and monitoring her respiratory distress.
Hoffman=s report sets out
the standard of care applicable to Green=s treating
physicians by name and describes in detail the care Green should have received
from them.  We therefore conclude that grouping the defendant doctors together
under the relevant standard of care for each condition does not render Hoffman=s report
inadequate.  See Romero v. Lieberman, 232 S.W.3d 385, 391B92 (Tex. App.CDallas 2007, no
pet.) (concluding Aone size fits all@ standard of care
was sufficient because all three doctors participated in treating patient=s condition);
Boone, 223 S.W.3d at 405B06 (holding single standard of care
applied to defendant doctors and physician=s assistant
sufficient because all were involved in administering treatment).  

Krell cites several cases in support of his argument that an
expert report naming multiple defendants but applying the same standard of care
to all fails to meet the statutory requirements.  See Taylor v. Christus
Spohn Health Sys. Corp., 169 S.W.3d 241, 246 (Tex. App.CCorpus Christi
2004, no pet.); Eichelberger v. St. Paul Med. Ctr., 99 S.W.3d 636, 639
(Tex. App.CDallas 2003, pet. denied); Doades v. Syed, 94
S.W.3d 664, 671B72 (Tex. App.CSan Antonio 2002,
no pet.); Rittmer v. Garza, 65 S.W.3d 718, 722B23 (Tex. App.CHouston [14th
Dist.] 2001, no pet.); Whitworth v. Blumenthal, 59 S.W.3d 393, 396 (Tex.
App.CDallas 2001, pet.
dism=d by agr.); Wood
v. Tice, 988 S.W.2d. 829, 831B32 (Tex. App.CSan Antonio 1999,
pet. denied).  Krell=s reliance on these cases is
misplaced.  While Taylor does require that the expert report state a
standard of care for each healthcare provider, nothing in Taylor explicitly
forbids applying the same standard of care to more than one physician if, as in
the present case, they all owed the same duty to the patient.  See Taylor,
169 S.W.3d at 245B46.  The expert reports in the other cases are distinguishable
because they either failed to state a standard of care, failed to specifically
name the defendant health care providers or failed to recognize that the health
care providers owed different duties to the patient.[5]














We further conclude that Hoffman=s report is not
conclusory as to causation.  Krell claims that Hoffman fails to explain how the
cardiomegaly and heart congestion associated with Green=s edema
contributed to her death and fails to show a causal link between the
administration of fentanyl, the decrease in Green=s respiratory
status, and her death.  Krell claims that in light of his limited involvement
as an on-call psychiatrist,[6]
the report does not sufficiently explain what he did or failed to do, nor does
it link any alleged deviations from the standard of care to any damages.  We
disagree.  As discussed above, Hoffman indicates that all four physicians,
Krell included, participated in caring for Green.  Hoffman states what the
doctors, Krell included, should have done to properly monitor and treat Green=s conditions.  He
states that if she had received the proper care, in all likelihood she would
have survived.  Hoffman explains the basis for his statements and describes a
causal link between Green=s congestive heart condition, the
depression of her respirations from over-medication, and the failure to
adequately monitor her deteriorating condition.  See Bowie, 79 S.W.3d at
52 (report must contain information linking expert=s conclusions to
alleged breach).  While Hoffman=s report could have been more specific as
to exactly how Green=s cardiomegaly and bronchial asthma caused
her death, we cannot say that the trial court=s conclusion that
it was sufficient constitutes an abuse of discretion.  See Hillcrest Baptist
Med. Ctr. v. Wade, 172 S.W.3d 55, 60B61 (Tex. App.CWaco 2005, pet.
dism=d by agr.)
(holding that because trial court could have concluded that when considered
together, expert reports contained statutory requirements, court did not abuse
its discretion in denying defendant medical center=s motion to
dismiss).  Further, an expert report need not marshal all the plaintiff=s proof as long as
it includes the expert=s opinion on each of the elements
identified in the statute.  See Palacios, 46 S.W.3d at 878. 
Accordingly, we conclude Hoffman=s report
represents a good‑faith effort to comply with the statutory definition of
an expert report, and the trial court did not abuse its discretion in denying
the motions to dismiss on this basis.  See Bowie, 79 S.W.3d at 52.  We
overrule Krell=s third and fourth issues.

CONCLUSION

Based on our review of the Colemans= claims and the four corners of Hoffman=s report, we conclude that Hoffman was qualified to
issue an expert opinion on the standard of care applicable to the defendant
physicians with respect to their treatment of Green=s edema, fentanyl medication, and respiratory
distress.  We further conclude that Hoffman=s
report meets the two-part Palacios test because it informs Sanjar and
Krell of the specific conduct the Colemans have called into question and
provides sufficient information for the trial court to conclude the claims have
merit.  See
Palacios, 46
S.W.3d at 879.  We hold the trial court did not abuse its discretion in denying
Sanjar=s and Krell=s motions to dismiss and therefore
affirm the trial court=s judgment.

 

 

           

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered
and Opinion filed February 19, 2008.

Panel consists of
Justices Yates, Fowler, and Guzman.









[1]  San Jacinto Methodist Hospital and Drs. Johnson and
Choby are not parties to this appeal.





[2]  In their first issue, Sanjar and Krell contend the trial court failed
to limit its review to the four corners of the report by requiring them to
produce evidence of their medical specialty.  As evidence of this, the doctors
point to the trial court=s questions regarding evidence in
the record that would establish their roles as psychiatrists, as well as the
court=s statement, AI just don=t read Chapter 74 as you suggest it
should be read where you have absolutely no evidentiary burden.@  We disagree with the doctors= interpretation that these
statements amounted to the trial court=s going beyond the four corners of the expert report. 
However, even if it were error, we have determined that Hoffman was qualified
to opine on Green=s medical care, and that Sanjar and
Krell participated in that medical care.  Therefore, regardless of whether the
trial court=s comments could be interpreted as
requiring Sanjar and Krell to put forth evidence, the trial court could still
have properly concluded, based on Hoffman=s report and curriculum vitae, that Hoffman was qualified
to render an expert opinion on the medical issues relevant to the claim.  See Donalson v. Barr, 86 S.W.3d 718, 720 (Tex.
App.CHouston [1st Dist.] 2002, no pet.) (holding that
appellate court must affirm when trial court reaches the right result, but for
the wrong reasons).  The doctors= first
issue is overruled. 





[3]  The report states, AWhat should have been done is that the patient should have had an
evaluation which included a chest x-ray, pulse oximetry and/or echocardiography
which would well have established the congestion related to both asthma and
congestive cardiomegaly which was found at autopsy.@





[4]  The report states:

The known consequences of a failure to provide the above listed care by
Dr. Sanjar, Dr. Krell, Dr. [Johnson], and Dr. Choby to Karen Green includes the
development of increasing congestion and the development of life threatening situations
. . . . the standard of care was breached and the patient, Karen Green,
developed cardiomegaly and exacerbation of her bronchial asthma with marked
congestion of the lungs.





[5]  For example, in Rittmer this court found the expert
report inadequate because it referred to the defendant physicians collectively
and lacked specificity as to the standard of care applicable to the different
portions of surgery performed by the individual doctors.  65 S.W.3d at 722B23.  In contrast to the report in Rittmer,
Hoffman=s report assigns the same duty to
all the defendant physicians to monitor, properly diagnose, and properly treat
Green=s edema and respiratory
difficulties.  Doades also involved a report that failed to state the
standard of care for each defendant health care provider.  94 S.W.3d at 672. 
However, Doades is distinguishable because while Hoffman=s report specifically states the
standard of care and describes the specific measures the treating doctors
failed to take when monitoring and treating Green=s conditions, the Doades report wrapped the
standard of care, breach, and causation into a general assertion that the
treating doctor and nurse A[failed] to properly monitor Doades and . . . [failed] to timely
identify and properly treat [his condition],@ a statement the court deemed conclusory.  Id. at
668, 671B72.   The remaining cases deal with
reports that completely failed to name any of the defendant physicians.  See
Eichelberger, 99 S.W.3d at 639 (no mention of defendant health care
providers by name); Whitworth, 59 S.W.3d at 396B97 (same); Wood, 988 S.W.2d
at 831B32 (plaintiff=s Aexpert report@ consisted of portions of defendant doctor=s deposition, did not include
doctor=s c.v., and did not mention any
defendant physician by name). 





[6]  Krell=s
argument regarding his limited role as an on-call, weekend psychiatrist amounts
to a claim that he owed no duty to Green to recognize, monitor, and diagnose
her deteriorating condition.  This argument is more appropriately raised in a
motion for summary judgment than a motion to dismiss under Chapter 74.  See
Wissa v. Voosen, No. 04‑07‑00386‑CV, __ S.W.3d __, 2007
WL 2780148, at *2B3 (Tex. App.CSan
Antonio Sept. 26, 2007, pet. filed) (physician=s challenge to expert report on grounds that he owed no duty to patient
outside his role as an anesthesiologist was properly raised in motion for
summary judgment, not motion to dismiss).