Opinion filed October 2, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed October 2,
2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00333-CV 

                                            __________

 

HENDRICK MEDICAL CENTER, Appellant

 

V.

 

BONNIE HEWITT, Appellee

 

 



 

On Appeal from the 350th District Court

 

 Taylor County, Texas

 

Trial Court Cause No. 08101-D

 



 

                                              M E
M O R A N D U M   O P I N I O N

The
trial court denied  Hendrick Medical Center=s
motion to dismiss this medical malpractice case for failure to provide expert
reports.  The trial court also denied Hendrick=s
motion to dismiss for failure to comply with Tex.
Civ. Prac. & Rem. Code Ann. '
74.351(b) (Vernon Supp. 2008).[1]  We affirm in
part, reverse and render in part, and reverse and remand in part.








Hewitt
sued Hendrick Medical Center (and others not involved in this interlocutory
appeal) alleging negligence in her care and treatment.  Hewitt alleged direct
health care liability claims against Hendrick aimed at the lack of various
policies, procedures, education, training, and supervision.  Although Hendrick
argues in its second issue on appeal that she did not, after reviewing Hewitt=s pleadings, we find that
Hewitt also alleged certain vicarious liability claims in which she asserted
that Hendrick was liable to her for the acts of its nurses and doctors. 
Hendrick=s second
issue on appeal is overruled.

Hendrick
claims in its first issue that the trial court erred when it did not grant
Hendrick=s motion to
dismiss the direct health care claims that Hewitt filed.  The argument is that
there were no expert reports filed in which those claims were addressed. 

We
review expert report determinations for an abuse of discretion.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877-78
(Tex. 2001) (construing former statute); Kendrick v. Garcia, 171 S.W.3d
698, 702 (Tex. App.CEastland
2005, pet. denied).  A trial court abuses its discretion when it acts in an
arbitrary or unreasonable manner without reference to any guiding rules or
principles.  See Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003)
(construing former statute). 








Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (Vernon Supp.
2008), when a party seeks recovery in a health care liability claim, that party
must timely serve statutorily adequate expert reports on each party or each party=s attorney.  If a party
fails to timely serve the expert report or reports C except where an extension is granted under Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c) (Vernon
Supp. 2008) C the
trial court, upon motion of the affected party, shall award reasonable attorney=s fees to the affected
physician or health care provider, and shall dismiss the claim with prejudice
to the refiling of the claim.  Section 74.351(b).  However, the court shall
grant a motion challenging the adequacy of the expert report only if it appears
to the court, after a hearing, that the report does not represent an objective
good faith effort to comply with Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6)
(Vernon Supp. 2008).  Section 74.351(r)(6) defines an expert report as a
written report by an expert that provides a fair summary of the expert=s opinions, as of the date
of the report, regarding the following:  (1) the applicable standards of care;
(2) the manner in which the care rendered by the physician or health care
provider failed to meet those standards; and, (3) the causal relationship
between such failure and the injury, harm, or other damages claimed. 

Hewitt
filed reports by R. Don Patman, M.D., P.A., and by Daniel Staples, a registered
nurse.  Those reports will be discussed later in detail, but as far as the
direct health care liability claims asserted against Hendrick are concerned, we
have not been able to find anything in either report that addresses the
applicable standard of care, the manner in which the care rendered by Hendrick
failed to meet those standards, or the causal relationship between any failure
and any injury, harm or other damages in relation to those claims.  We hold
that Hewitt did not file an expert report as to those claims. The trial court
abused its discretion when it did not dismiss the direct health care liability
claims asserted against Hendrick.  Hendrick=s
first issue on appeal is sustained and the direct liability claims are
dismissed.  Because there was no expert report filed regarding the direct
claims, as opposed to an inadequate report, we do not remand these claims to
the trial court for it to consider whether to grant an extension.  See
Section 74.351(c).  We do, however, remand the issue to the trial court for it
to determine the amount of attorney fees to award Hendrick in connection with
the direct health care liability claims.

In
her third issue on appeal, Hewitt maintains that the trial court erred when it
ruled that an adequate expert report had been filed.  Because of our holding as
to the direct health care liability claims, we will discuss only the vicarious
health care liability claims in connection with this issue on appeal. 

We
will first examine the report prepared by Dr. Patman insofar as it pertains to
the vicarious claims asserted against Hendrick.  Hendrick maintains that the
report is not adequate because, among other things, Dr. Patman does not show
that he is qualified to express an opinion on the standard of care for a
hospital or a nurse.  Because we have held that Hewitt did not file an expert
report with respect to the direct claims against Hendrick, we need not discuss
standards of care for a hospital. 

An
expert in a health care liability claim made against a health care provider
must qualify under Tex. Civ. Prac. &
Rem. Code Ann. '
74.402 (Vernon 2005).  Before a person can qualify as an expert under Section
74.402(b) and give an opinion on the issue of whether the provider departed
from accepted standards of care, that person must be:








(1) . . . 
practicing health care in a field of practice that involves the same type of
care or treatment as that delivered by the defendant health care provider, if
the defendant health care provider is an individual, at the time the testimony
is given or was practicing that type of health care at the time the claim
arose;

 

(2) has
knowledge of accepted standards of care for health care providers for the
diagnosis, care, or treatment of the illness, injury, or condition involved in
the claim; and

 

(3)
is qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of health care.

Section 74.402(c) provides:

In determining
whether a witness is qualified on the basis of training or experience, the
court shall consider whether, at the time the claim arose or at the time the
testimony is given, the witness:

(1)
is certified by a licensing agency of one or more states of the United States
or a national professional certifying agency, or has other substantial training
or experience, in the area of health care relevant to the claim; and

 

(2)
is actively practicing health care in rendering health care services relevant
to the claim.

Dr.
Patman ranked second, scholastically, when he received his medical degree in
1958.  He did his internship at Parkland Memorial Hospital in Dallas.  Dr.
Patman also did his surgical residency at Parkland.  He had been board
certified in general surgery since 1966 and in general vascular surgery since
1983.  At the time of his report, he was a clinical assistant professor of
surgery at the University of Texas Southwestern Medical School in Dallas.  He
was attending surgeon at Baylor University Medical Center in Dallas.  He was a
member of several colleges, societies, and other medical related associations. 
At the time of his report, Dr. Patman had authored or coauthored some sixty-six
publications.  

Hendrick
claims that Dr. Patman was not qualified to give an opinion on the standard of
care relative to Hendrick and its nurses.  A physician is not disqualified from
giving an opinion regarding nursing care simply because he is a physician
rather than a nurse.  See Hall v. Huff, 957 S.W.2d 90, 100 (Tex. App.CTexarkana 1997, pet.
denied). Other jurisdictions also have reached that same conclusion. See
McMillan v. Durant, 439 S.E.2d 829, 832 (S.C. 1993); Goff v. Doctor=s Gen. Hosp. of San Jose,
333 P.2d 29, 33 (Cal. Dist. App. 1958).








Here,
Dr. Patman outlined his experience and also stated that he was familiar with
the standards of care for physicians and for nursing personnel in the type of
medical treatment involved in this case.  But, unlike the cases upon which
Hendrick relies, Dr. Patman went further and said: 

I
have encountered countless patients who have transiently required vasopressor
agents during the preoperative, intraoperative or postoperative period. 
Moreover, I am familiar with the most suitable and recommended site of
administration, safeguards for the use of such agents, indication for their
use, contraindications for that use as well as recommended antidotal treatment
for the development of peripheral ischemia in case of extravasation of such a
drug into the patient=s
tissues.

Further, we note
that the trial court is mandated to consider those factors set out in Section
74.402(c) (licensing, certification, other substantial training or experience,
and active practice relative to the claim).  Dr. Patman=s report and curriculum vitae detail those
matters.  

As
to Hendrick=s claim
that Dr. Patman does not say who violated the standard of care, Dr. Patman
identifies the nursing personnel as AZMC@ and APJR.@  In doing so, he used the method of
identification employed in the medical records that he reviewed.  Furthermore,
he details the progress noted by these nurses as Hewitt=s treatment continued and says that the CCU
nurses breached the applicable standard of care as noted.  Hendrick relies upon
Taylor v.  Christus Spohn Health Sys. Corp., 169 S.W.3d 241 (Tex. App.CCorpus Christi 2004, no
pet.).  Dr. Patman=s
report is different from the report before the court in Taylor.  There,
the expert reported that A[t]he
failure to diagnose and treat this condition was negligence by Dr. Wright (ER
Physician), Team Health Southwest, L.P., Coastal Cardiology, Charles Schecter,
M.D. (cardiologist), Raymond Graf, M.D.  (cardiologist), and Spohn Hospital
Shoreline Emergency Room, and that negligence was a proximate cause of the
injury and death of Ronald Clayton Taylor.@ 
Taylor, 169 S.W.3d at 244.  Hendrick=s
complaint is overruled.

Hendrick
asserts that Dr. Patman=s
report fails to establish causation.  Dr. Patman clearly stated in his report
that his opinions, including the opinions relating to causation, were based
upon reasonable medical probability.  Perhaps the arguments raised by Hendrick
might go to the weight of testimony at a trial, but this appeal does not
involve a trial, it involves the lack of an expert report and claims of a
deficiency in expert reports. 








An
expert report need not marshal all the plaintiff=s
proof, but the report must contain the expert=s
opinion on each of the statutorily required elements:  standard of care,
breach, and causal relationship.  Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex.
2002).  Expert reports should inform the defendant of the specific conduct that
the claimant has called into question and should also provide a foundation upon
which a trial court can conclude that the claims have merit.  Leland, D.D.S.
v. Brandal, 257 S.W.3d 204 (Tex. 2008).  The report in this case serves
those purposes as to the vicarious health care liability claims asserted
against Hendrick. Dr. Patman=s
report is not conclusory, and it shows that he is qualified to render an
opinion on Hewitt=s
vicarious health care liability claims.   Dr. Patman=s report constitutes a good faith attempt to
satisfy the requirements and purposes of an expert report. 

Hendrick
also claims that Nurse Staples=s
report is deficient because it does not Aestablish
a reliable standard of care or demonstrate that [Nurse Staples] is qualified.@  Because we have held that
Dr. Patman=s report
satisfies the requirements for an expert report under Tex. Civ. Prac. & Rem. Code Ann. ch. 74 (Vernon 2005
& Supp. 2008) as to Hewitt=s
vicarious claims against Hendrick, we need not consider whether Nurse Staples=s report is sufficient. 

 Hendrick=s third issue on appeal is
overruled except as it might pertain to the direct health care liability
claims.  Insofar as the third issue on appeal does pertain to direct health
care liability claims, it is sustained.

We
reverse the judgment of the trial court whereby it denied Hendrick=s motion to dismiss for
failure to file an expert report on direct health care liability claims.  We
render judgment dismissing those claims, but remand for the trial court to
assess an award of attorney=s
fees to Hendrick related to those claims.  We affirm the trial court=s order denying Hendrick=s request for all other relief.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

October 2, 2008

Panel consists
of: Wright, C.J.,

McCall, J., and
Strange, J.









[1]This interlocutory appeal is authorized by Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9) (Vernon 2008).