

NUMBER 13-08-00113-CV

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RGV HEALTHCARE ASSOCIATES, INC. &
LEGEND RGV McALLEN LP D/B/A LEGEND
TRANSITIONAL CARE- McALLEN,                          Appellants,

v.

OFELIA ESTEVIS, ODELIA MARROQUIN,
OREFELINDA CARDENAS, DELIA FLORES, MIKE
MARROQUIN, BALDEMAR MARROQUIN, OFELIA
M. ESTEVIS, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF SANTOS MARROQUIN,                   Appellees.

On appeal from the 332nd District Court
of Hidalgo County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Opinion by Chief Justice Valdez**

Appellants, RGV Healthcare Associates, Inc. &  Legend RGV McAllen LP d/b/a

Legend Transitional Care-McAllen (collectively "RGV Healthcare"), appeal the denial of their motion to dismiss the healthcare liability claims brought by Odelia Marroquin, Orfelinda Cardenas Delia Flores, Mike Marroquin, Baldemar Marroquin, and Ofelia M. Estevis, individually and as personal representative of the Estate of Santos Marroquin (collectively "the Marroquins") for the wrongful death of Santos Marroquin. By a single issue, RGV Healthcare argues that the expert report submitted by the Marroquins does not constitute a good-faith effort to comply with the expert report requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (l), (r)(6) (Vernon Supp. 2008). We affirm in part and reverse and remand in part.

## I. BACKGROUND

On June 1, 2005, Santos, a ninety-three year old woman, was admitted to RGV Healthcare for rehabilitation of a post-stroke condition. Santos suffered from diabetes, high blood pressure, coronary artery disease, and congestive heart failure. On the morning of June 4, 2005, nurses discovered that Santos's lower right leg was cool and did not have a pulse. At noon, Santos was transferred to the emergency room at Rio Grande Regional Hospital, and she underwent an embolectomy to remove an embolism that had developed in her right leg. During the procedure, the surgeon discovered that Santos's right leg was pre-gangrenous and amputated it above-the-knee. On June 10, 2005, Santos's lower left leg was noted to be cool, but no further surgical intervention was ordered. Santos then developed atrial fibrillation, a fever, and a urinary tract infection. She died on June 13, 2005.

2

On March 26, 2007, the Marroquins sued RGV Healthcare, J. Michael Koch, M.D.,[1] Pablo, a registered nurse, and Gracie, a certified nurse's aide.[2] The Marroquins alleged that RGV Healthcare was: (1) directly liable for Santos's death, (2) vicariously liable under the doctrine of respondeat superior for Pablo's and Gracie's negligence, and (3) liable for negligent hiring and supervision (collectively "the Marroquins's liability theories"). RGV Healthcare answered with a general denial, pleaded for limitations under chapter 74 of the civil practice and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.301, 74.302, 74.303 (Vernon 2005), and asserted various affirmative defenses.

On July 24, 2007, the Marroquins tendered an expert report by Lige B. Rushing, M.D., who, after reviewing Santos's medical records from RGV Healthcare and Rio Grande Regional Hospital, opined that:

> The standards of care for a long-term care facility and its nursing staff such as [RGV Healthcare] requires that they provide that level of care and treatment that a reasonable, prudent, and similar facility would provide under the same or similar circumstances.
>
> Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well being, as defined by and in accordance with the comprehensive assessment and plan of care.
>
> In order to meet the standards of care in this case, Mrs. Marroquin should have had a daily body check. This means examination of the upper extremities and the lower extremities and her body for evidence of edema, skin integrity, and whether the skin was dry, evidence of abrasions, tears, ulcers, and the temperature of the skin.
>
> In this case when the cold right leg was noted, her physician was notified.

---

[1] Michael Koch, M.D., was Santos's attending physician at RGV Healthcare. The Marroquins subsequently nonsuited him, and he is not a party to this appeal.

[2] The Marroquins did not know Pablo's and Gracie's last names when they filed suit, and despite discovery, the family has not ascertained their last names. To date, Pablo and Gracie have not been served in the underlying suit, and they are not parties to this appeal.

3

The problem is that the arterial occlusion of the right leg more likely than not occurred 24-36 hours prior to its discovery. This is evidenced by the fact that her leg was beyond salvage when she first arrived at the hospital.

By the time Mrs. Marroquin arrived at Rio Grande Medical Center, her leg was beyond salvage and there was no option, but to amputate her leg.

If the arterial occlusion had been discovered earlier then more likely then not her leg could have been salvaged by the performance of an embolectomy. **The failure of <u>the nurses</u> to appropriately monitor Mrs. Marroquin resulted in their failure to detect the arterial thrombosis at or near the time it occurred.** As a result, more likely than not, of the stress and trauma she developed congestive heart failure, atrial fibrillation, and subsequently multiorgan failure i.e. kidney, liver and heart, which resulted in her death.

It should be noted that Mrs. Marroquin was stable until the time she developed her acute arterial occlusion. Had the acute arterial occlusion been diagnosed in a timely fashion th[e]n more likely than not the thrombus could have been removed and she would have survived.

(Emphasis added.)

On August 13, 2007, RGV Healthcare filed objections to Rushing's report on the grounds that it did not define the standard of care, breach, and causation as to each defendant. Regarding the causation element, the objection referenced what appears to be a medical report about a different patient's injuries because it asserts:

Here, Plaintif[s]'s sole statements with regard to causation are: "[t]his combination of procedures potentially altered blood flow to the nipple resulting in eventual necreosis;" and "[t]he cumulative effect of these procedures appears to have caused nipple ischemia and eventual nipple necrosis and loss of tissue." Similar to *Costello*, these statements are conclusory because they do not explain how or why the alleged failure to meet the standard of care caused pressure ulcer development. Further, the statements do not explain the medical basis or reasoning for the conclusion that Defendant's alleged breach "appears to have caused nipple ischemia and eventual necrosis and loss of tissue." As a result, the statements are conclusory and thus fail to satisfy the Chapter 74 requirements.

4

(citations omitted.)[3] RGV Healthcare also moved to dismiss the suit. *See id.* § 74.351(b). The Marroquins responded by claiming that Rushing's report was adequate as to the standard of care, breach, and causation and that it represented a good-faith effort to comply with Chapter 74. In the event that the trial court found the report deficient, the Marroquins requested a thirty-day extension to file an amended report. *See id.* § 74.351(c).

On October 3, 2007, a hearing on RGV Healthcare's objections and motion to dismiss was held, and the trial court accepted post-hearing letter briefs. On February 12, 2008, the trial court overruled the objections and denied the motion to dismiss. This interlocutory appeal ensued. *See id.* § 51.014(a)(9) (Vernon 2008).

## II. DISCUSSION

In a single issue, RGV Healthcare argues that the trial court abused its discretion in denying the motion to dismiss because the Marroquins failed to serve a proper expert report.

### A. Standard of Review and Applicable Law

We review the trial court's decision to deny a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). The trial court is limited to reviewing the information within the four corners of the report. *Id.* at 878. "An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding principles." *Moore v. Sutherland*, 107 S.W.3d 786, 789 (Tex. App.–Texarkana 2003, pet. denied) (citing

---

[3] A review of the record does not reveal that the Marroquins's claims involve nipple necrosis or pressure ulcers. RGV Healthcare's objections were never amended within the twenty-one day period to reference Rushing's report as to causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2008).

*Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)). An appellate court may not reverse for abuse of discretion simply because it would have decided the matter differently. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985).

"With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). The appellant must "establish that the trial court could reasonably have reached only one decision." *Id*. at 840. Conversely, a trial court has no discretion in determining what the law is or in applying the law to the facts. "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id*.

Section 74.351 requires that a plaintiff serve on each party "one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). An "expert report" is defined as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Id. § 74.351(r)(6). A court must grant a motion to dismiss under section 74.351(b) if, after the 120-day deadline has passed, it appears to the court that the report does not represent an objective, good-faith effort to comply with the definition of an expert report. *Id*. § 74.351(l).

To qualify as a "good-faith effort," the report must "provide enough information to fulfill two purposes": (1) it must "inform the defendant of the specific conduct the plaintiff

6

has called into question," and (2) it must "provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879. "A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements." *Id*.

## B. Waiver

At the outset, we address whether RGV Healthcare waived its challenge to the causation element because its objection does not reference Rushing's report at all. Instead, RGV Healthcare assails the adequacy of Rushing's report by referring to an expert report on a different patient's maladies.[4] At oral argument, the Marroquins suggested that the objection was insufficient and did not preserve the issue for our review because it erroneously referenced a different expert report. RGV Healthcare contended that its objection was properly preserved because the Marroquins, by responding to the objection, apparently comprehended it. In their written response, the Marroquins did not reference RGV Healthcare's causation argument; they simply urged the trial court to find Rushing's report sufficient on all of the elements.

RGV Healthcare's "apparently it was preserved" argument belies the fact that it had the burden to articulate an objection and assumes that, by responding to what they considered a generic, boilerplate objection, the Marroquins converted an incoherent objection into a sufficient one. *See* TEX. R. APP. P. 33.1 (providing the prerequisites to

---

[4] RGV Healthcare never amended its objection to Rushing's report within the twenty-one day period after Rushing's report was served. Admittedly, RGV Healthcare filed a letter brief on September 20, 2007. However, by that date the trial court could have only considered the August 13, 2007 objections. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, *failing which all objections are waived*.") (emphasis added).

7

preserving a complaint for appellate review); *Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex. App.–Houston [14th Dist.] 1995, writ denied) (providing that the burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal). Accordingly, RGV Healthcare's objection to "Rushing's report" on the ground that it was conclusory in opining on the cause of Santos's "nipple necrosis" and "pressure ulcer development" is insufficient because it is not related to the facts of this case, presents nothing for our review, and is waived.

## C.    Direct Liability

The Marroquins pleaded, *inter alia*, that RGV Healthcare was directly liable for the allegedly negligent care that Santos received. Before the trial court, RGV Healthcare objected to Rushing's opinion on its deviation from the standard of care on the ground that his report did "not explain what [RGV Healthcare] should have done differently and d[id] not put [RGV Healthcare on] notice of the complained of conduct." On interlocutory appeal, RGV Healthcare argues that the report did not specifically identify it by name with to regard to how it breached the standard of care. We agree.

Although Rushing opines that RGV Healthcare was required to "provide that level of care and treatment that a reasonable, prudent, and similar facility would provide under the same or similar circumstances," his report implicates only the conduct of Pablo and Gracie, RGV Healthcare employees. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam) (holding that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient."). Rushing's report did not speak as to how RGV Healthcare's direct conduct, such as the implementation of procedures, policies, or rules that could have

8

ensured vigilant care, deviated from the applicable standard of care. *See Ctr. for Neurological Disorders v. George*, 261 S.W.3d 285, 294 (Tex. App.–Fort Worth 2008, pet. denied) (op. on remand) (finding an expert report deficient as to a claim for direct liability against a professional association because it only discussed the association's vicarious liability and not its specific conduct). Accordingly, there is nothing in the record to support the trial court's decision, and we hold that it abused its discretion by denying RGV Healthcare's objection to Rushing's report as it related to the Marroquins's direct liability claims.

## D. Vicarious Liability

### 1. The Taylor Case

RGV Healthcare contends Rushing's report is deficient because it does not delineate the standard of care and breach for Pablo's and Gracie's individual conduct. To support its contention, RGV Healthcare relies on this Court's opinion in *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241 (Tex. App.–Corpus Christi 2004, no pet.). In *Taylor*, a healthcare liability claimant sued an emergency room physician, a hospital, two cardiologists, and a cardiology association under Chapter 74's predecessor. *Id*. at 242. The claimant tendered an expert report that presented only a single standard of care and asserted that it was equally applicable to all parties involved. *Id*. at 246. The defendants moved for dismissal on the grounds that the report was conclusory and that it improperly grouped all the defendants together, thereby failing to specifically address the standard of care and breach of duty with respect to each defendant. *Id*. at 243. The trial court granted the defendant's motion and dismissed the suit. *Id*. at 242. We affirmed and noted that "[c]ollective assertions of negligence against various defendants are inadequate." *Id*. at

9

244 (citing *Doades v. Syed*, 94 S.W.3d 664, 671-72 (Tex. App.–San Antonio 2002, no pet.)).

*Taylor* is distinguishable because it did not deal with healthcare liability claims asserted under a theory of vicarious liability. The defendants in *Taylor* were unique healthcare providers who had all been served, appeared before the trial court, and objected to the expert report offered by the claimant. No where in *Taylor* did we mention vicarious liability claims. In this case, the Marroquins sued RGV Healthcare, Pablo, and Gracie. Pablo and Gracie have not been served and are not parties to this appeal. As to RGV Healthcare, the Marroquins asserted three liability theories against it, and they presented a report that singled out alleged omissions made by RGV Healthcare's nurses. RGV Healthcare, responding to only the vicarious liability theory, objected to the report because it did not delineate the expert report requirements as to Pablo, Gracie, and itself and relied on *Taylor* as on point authority.

*Taylor*, however, does not require that an expert report delineate and define allegedly negligent conduct as between an agent and a principal because it implicitly dealt with direct liability claims. Furthermore, in a memorandum opinion issued four years after *Taylor*, we declined to draft the rule that RGV Healthcare urges on us. *See Jimenez*, 2008 Tex. App. LEXIS 6857, at **12-21.[5]

---

[5] In *Jimenez*, healthcare liability claimants sued a surgical facility, the surgeon, two nurses, and a certified registered nurse anesthetists ("CRNA"). *Renaissance Surgical Centers-South Texas, L.L.P. v. Jimenez*, No. 13-07-00121-CV, 2008 Tex. App. LEXIS 6857, at **2-3 (Tex. App.–Corpus Christi Aug. 28, 2008, no pet.) (memo op.). The claims against the surgical facility were brought under theories of direct and vicarious liability. *Id*. at **12-25. As to the vicarious liability theory against the surgical facility, the claimants tendered a report by an anesthesiologist that outlined alleged omissions made by the CRNA. *Id*. at **12-14. The surgical facility objected on the grounds that the report did not specifically identify it nor explain how it was vicariously liable, and it moved for dismissal. *Id*. at *15. The CNRA also moved for dismissal. *Id*. at *2, n3. The trial court denied both motions to dismiss. *Id*. at *5. Only the surgical facility appealed, and we affirmed. *Id*. at *21.

The dissent posits that our holding in this case conflicts with *Taylor* because that case stands for the proposition that an expert report must explain how each defendant breached the standard of care. It does, when each defendant is sued on a theory of direct liability, is served with citation, answers the suit, and challenges the expert report. But that is not the case here. In essence, the dissent ignores the procedural posture of *Taylor* to read into the case its own unprecedented requirement that an expert report detail specific and discrete conduct of individual employees—in this case Pablo and Gracie—whose standard of care has already been defined as a class. We will not contort our precedent to result such a result.

*2. The Railsback Case*

The Marroquins argue that Rushing's report properly set forth the standard of care for nurses—the positions that Pablo and Gracie held while employed by RGV Healthcare—and how they breached that standard of care. They direct us to the *Railsback* case as supporting authority. In *University of Texas Medical Branch v. Railsback*, a healthcare liability claimant sued the hospital where she had an allegedly negligent knee surgery and the surgeons who performed the procedure. 259 S.W.3d 860, 862 (Tex. App.–Houston [1st Dist.] 2008, no pet.). The claimant asserted that the hospital was directly liable and vicariously liable for the surgeon's and nursing staff's negligence. *Id*. She tendered an expert medical report that detailed the standard of care for the surgeon and the "operating room nursing staff," but it never referenced any nurse by name. *Id*. at 866-67. The hospital objected to the report and moved for dismissal, but the trial court denied the hospital's objection and motion. *Id*. at 864.

On interlocutory appeal, the hospital argued that the report could not support, *inter*

11

*alia*, the claims for direct liability and vicarious liability based upon the nursing staff's alleged negligence. *Id*. at 864-66. The Houston First District Court of Appeals held that the trial court abused its discretion by not dismissing the direct liability claims. *Id*. at 866. It also held that the trial court did not abuse its discretion in denying the hospital's motion to dismiss as to the vicarious liability claims because the claimant had not named any nurse as a defendant. *Id*. at 868 (citing *Kettle v. Baylor Med. Ctr. at Garland*, 232 S.W.3d 832, 841 (Tex. App.–Dallas 2007, pet. denied); *Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 185 S.W.3d 65, 70 (Tex. App.–San Antonio 2005, pet. denied)).

RGV Healthcare focuses on the clause noting that the claimant had not named any nurse as a defendant and contends that *Railsback* is distinguishable from this case because the Marroquins named Pablo and Gracie as defendants. But, neither the *Railsback* Court nor the two courts that it cites explain why an expert report may group nurses together if a hospital is alleged to be vicariously liability for their actions and the nurses are not sued. Furthermore, RGV Healthcare has not provided us with a rationale for the "not sued" requirement. Given the lack of supporting rationale for the "not sued" requirement, that Pablo and Gracie have not been served and are not parties to this appeal, and that Rushing's report details the conduct of vicariously liable parties, we see no reason to apply it in the instant case.

*3. Analysis*

Section 74.351 requires that the plaintiff serve on each defendant whose conduct is implicated by a healthcare liability claim an expert report that sets forth the standard of care, breach of that standard, and causation. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6). When a plaintiff's claim against a hospital is not for direct negligence, but

12

is based on the conduct of an employee through the doctrine of respondeat superior, the expert report need not identify the hospital by name or include an opinion about how the employee was acting in the course and scope of employment for the hospital. *Univ. of Tex. Sw. Med. Center v. Dale*, 188 S.W.3d 877, 879 (Tex. App.–Dallas 2006, no pet.). In fact, a medical expert would not be qualified to render such an opinion on the legal issue of vicarious liability. *Id*. at 879 n.1; *see also In re CHCA Conroe, L.P.*, No. 09-04-453-CV, 2004 Tex. App. LEXIS 10481, at *3 (Tex. App.–Beaumont Nov. 23, 2004, orig. proceeding) (mem. op.) ("The conduct by the hospital on which the agency relationship depends is not measured by a medical standard of care. These are principles of agency law on which no expert report is required.").

If the report identifies conduct by the hospital's employee, the hospital is implicated, and as long as the report adequately addresses the standard of care applicable to the employee, how the employee breached the standard of care, and that the breach caused the plaintiff's injury, it is sufficient as against the hospital to satisfy the expert report requirement for the vicarious liability claims. *Dale*, 188 S.W.3d at 879; *see also Casados v. Harris Methodist H-E-B*, No. 02-05-080-CV, 2006 Tex. App. LEXIS 6357, at *12 (Tex. App.–Fort Worth 2006, no pet.) (mem. op.) (holding plaintiff satisfied expert report requirements with respect to vicarious liability claims by filing expert report detailing negligence of doctors, for whose actions hospital was liable).

Rushing's report provided that the standard of care for nurses at rehabilitation facilities such as RGV Healthcare was to perform daily body checks of the extremities for, among other things, body temperature. As to breach, the report notes that Rushing reviewed RGV Healthcare's medical records, and the report does not mention whether

daily body checks were noted in the records. Accordingly, we hold that the trial court did not abuse its discretion by relying on Rushing's report to satisfy the expert report requirements on the Marroquins's vicarious liability claims against RGV Healthcare.

## E.  Negligent Hiring and Supervision

The Marroquins's third liability theory against RGV Healthcare is that it negligently hired and supervised employees. The context of Rushing's report clearly implicates RGV Healthcare's role as Pablo's and Gracie's supervisor. However, neither before the trial court nor on interlocutory appeal has RGV Healthcare articulated an objection, issue, or argument in which it asserts that Rushing's report was deficient as to the Marroquins's negligent hiring and supervision theory. Accordingly, the issue is waived. *See* TEX. R. APP. P. 33.1. *Cf. Obstetrical & Gynecological Assocs., P.A. v. McCoy*, No. 14-08-00762-CV, 2009 Tex. App. LEXIS 2410, at *14 (Tex. App.–Houston [14th Dist.] Apr. 9, 2009, pet. filed) (holding that a professional association's objection regarding the sufficiency of an expert report's opinion on a claimant's vicarious liability claim against the association is waived when a proffered report detailing the association's doctor's conduct sufficiently implicated the association and the association did not object). [6]

RGV Healthcare's first issue sustained in part, and overruled in part.

### III. CONCLUSION

We affirm the trial court's order denying RGV Healthcare's objections as it relates to the Marroquins's claims for vicarious liability and negligent hiring and supervision. We

---

[6] The dissent summarily states that because "the Marroquins failed to serve an expert report addressing their claims for negligent hiring, supervision, training, and retention, I believe that the trial court was required to dismiss the complained-of claims upon appellants' request." The problem with the dissent's position is that RGV Healthcare never lodged an objection against Rushing's report as to the aforementioned claim and never moved to dismiss that claim.

14

reverse the trial court's order as it relates to the Marroquins's direct liability claim. The case is remanded so that the trial court may consider whether to grant a thirty-day extension to cure defects in the report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008).

 

 

_____               ROGELIO VALDEZ
Chief Justice

Dissenting In Part and Concurring In Part Opinion
by Justice Rose Vela.

Opinion delivered and filed on
this the 2nd day of July, 2009.