

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00243-CV

---

El Paso V Enterprises, L.L.C., d/b/a Pebble Creek Nursing Cen ter; Creative Solutions in Healthcare, Inc.; and Honor X Enterprises, L.L.C., **Appellants**

v.

Rodolfo Reyes, Individually, on Behalf of Wrongful Death Beneficiaries, and as the Proposed Administrator of the Estate of Estela Reyes, **Appellee**

---

On Appeal from the County Court at Law No. 3
El Paso County, Texas
Trial Court No. 2025DCV0428

---

## MEMORANDUM OPINION

The health care liability suit underlying this interlocutory appeal was brought by Appellee Rodolfo Reyes, Individually, on Behalf of Wrongful Death Beneficiaries, and as the Proposed Administrator of the Estate of Estela Reyes against Appellants El Paso V Enterprises, L.L.C., d/b/a Pebble Creek Nursing Center; Creative Solutions in Healthcare, Inc.; and Honor X Enterprises, L.L.C. Appellants challenge the trial court's order denying their motions to dismiss this suit and overruling their objections to Reyes's threshold expert reports provided under Texas Civil Practice

and Remedies Code § 74.351. Concluding that Appellants have not shown that the reports fail to reflect a good faith effort to comply with the statute, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Reyes alleges that while residing at Pebble Creek Nursing Center, his mother, Estela Reyes, developed "changes in her skin integrity, advancing to a Stage IV pressure wound," causing her health to decline and finally resulting in her death.

Reyes filed a health care liability suit against Appellants alleging corporate negligence, medical negligence, and gross negligence. Reyes further alleged that each Appellant "owned, operated, managed, and/or controlled Pebble Creek Nursing Center," was "believed to have done business as 'Pebble Creek Nursing Center' as an assumed business name," and was part of a joint venture in which each Appellant "owed a joint duty to [Ms. Reyes] to provide the same level of care and treatment as any other reasonable, prudent, similar business[.]" In addition, Reyes alleged that Appellants were vicariously liable for "the acts . . . performed by the agents, representatives, servants, and/or employees of [Appellants]" and that "all agents, servants, and/or employees of [Appellants] were acting in furtherance of the duties of their agency, representation, employment, and/or official duties."

Reyes provided two threshold expert reports under § 74.351(a)—one by Cynthia A. Stinson, R.N., addressing the standard of care and breach, and another by Michael J. Dominguez, M.D., addressing all negligence elements.

Appellants filed motions to dismiss and objections to both reports. As to Stinson, Appellants argued she was unqualified because her report and CV are "devoid of any reference to any experiences in a nursing home" and "devoid of information showing she has any experience, knowledge, training, or education relating to . . . the prevention and treatment of pressure wounds in a nursing home setting." As to Dominguez, Appellants argued he was unqualified because he is

2

"currently a family medicine physician," and "does not offer any factual basis for [] having experience, knowledge, or training regarding the care of residents in a nursing home or as to the prevention, development, or treatment of pressure injuries in a nursing home." In addition, El Paso V argued that Stinson's and Dominguez's opinions are conclusory, while Creative Solutions and Honor X argued that both reports are "completely devoid of any discussion related to a standard of care owed by [them]," and that they "do not own or operate Pebble Creek and would have a separate standard of care."

Reyes filed a response, contending that his expert reports are "sufficient, state non-conclus[ory] opinions, and exceed the requirements imposed . . . by Chapter 74." Reyes also requested a 30-day extension to cure any deficiencies if the trial court found otherwise.

After a hearing, the trial court signed an order denying Appellants' motions to dismiss and overruling their objections. This interlocutory appeal followed, as permitted by Texas Civil Practice and Remedies Code § 51.014(a)(9).

## II. ISSUES ON APPEAL

On appeal, Appellants contend the trial court's denial of their motions to dismiss constituted an abuse of discretion because Stinson and Dominguez (1) are unqualified to offer opinions in this case; (2) offer merely conclusory opinions as to El Paso V; and (3) say nothing about the standard of care applicable to Creative Solutions and Honor X.

## III. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a threshold expert report's adequacy under § 74.351 for an abuse of discretion. *Abshire v. Christus Health S.E. Texas*, 563 S.W.3d 219, 223 (Tex. 2018); *Taha v. Blackburn*, 656 S.W.3d 596, 600 (Tex. App.—El Paso 2022, no pet.). Under an abuse-of-discretion standard, the appellate court defers to the trial court's factual determinations if they are supported by evidence but reviews the trial court's legal determinations de novo. *Stockton v.*

3

*Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). A trial court abuses its discretion if it rules without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). As with many discretionary decisions, "[c]lose calls [under § 74.351] must go to the trial court." *Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714 S.W.3d 536, 544 (Tex. 2025).

Under § 74.351(a), a plaintiff must serve a threshold expert report on each defendant against whom a health care liability claim is asserted. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The report must include "a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6).

In addition, the report or its required accompanying curriculum vitae (CV) must show that the expert is qualified. *El Paso Specialty Hosp. Ltd. v. Gurrola*, 510 S.W.3d 655, 659 (Tex. App.— El Paso 2016, no pet.) (citing *In re McAllen Med. Center, Inc*., 275 S.W.3d 458, 463 (Tex. 2008)).

A person is qualified to offer an opinion on whether the standard of care for a non-physician health care provider was breached if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience.

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b); *see also* § 74.351(r)(5)(B) (providing that § 74.402 applies to threshold expert reports). In this context, "practicing health care" includes: (1) "training health care providers in the same field as the defendant health care provider at an accredited educational institution"; or (2) "serving as a consulting health care provider and being licensed,

certified, or registered in the same field as the defendant[.]" *Id*. § 74.402(a).

A person is qualified to offer an opinion on causation in a health care liability case if the person is "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." *Id.* § 74.351(r)(5)(C).

A motion challenging a threshold expert report's adequacy may be granted only if the report does not reflect an "objective good faith effort" to comply with the statute. *Id*. § 74.351(*l*). A report reflects such an effort if it "(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit." *Bush*, 714 S.W.3d at 543. Stated differently, a threshold expert report is measured by a "lenient standard" requiring "[n]o particular words or formality"; it is adequate if it "includes all the required elements, and . . . explains their connection to the defendant's conduct in a non-conclusory fashion." *Id*. At this early stage, the statute's purpose is to "weed out frivolous malpractice claims," not to adjudicate potentially meritorious ones. *Id*. A report is not required to "marshal all the plaintiff's proof." *Id*. at 543–44. We consider each proffered expert in turn.

## IV. ANALYSIS

### A. Nurse Stinson

Appellants contend that Stinson is unqualified because her report and CV "are completely devoid of any reference to any experiences in a nursing home" and "completely devoid of information showing she has any experience, knowledge, training, or education relating to the prevention and treatment of . . . pressure wounds in a nursing home setting." In addition, El Paso V maintains Stinson's opinions are conclusory because she "never states what the standard of care is for a nursing home in treating a resident in similar circumstances," and "does not ever explicitly state [it] *breached* any standard of care." (emphasis in original).

We do not agree that Stinson's report and CV are devoid of information showing she is

5

qualified to render opinions about pressure wounds in a nursing home setting. Stinson's CV states that she has experience "working in [l]ong-term care[1]—both as staff nurse . . . and as a consultant for standards of practice and educational concerns in [a] 250-bed facility," and experience in "rotation to long-term care and rehabilitation units with RN students for 10-week rotation." Further, Stinson's report states that "[t]hrough [her] education, training, and practice [she] ha[s] knowledge of the accepted Standards of Nursing Care applicable to nurses caring for patients presenting with medical conditions such as Ms. Estela Reyes."

Nor do we agree with El Paso V's contention that Stinson never states the standard of care or how it was breached. As El Paso V acknowledges, Stinson opines that Appellants "should have . . . put [Reyes] on a prevention routine to prevent pressure injury," including "skin assessment (use of risk scale protocol in place for residents at high risk), turning and offloading schedule, nutrition consult, physician notification, and air mattress implementation." While El Paso V contends Stinson does not indicate "what skin assessments should be utilized, what a turning and repositioning schedule looks like, what a nutrition consult would have entailed, how often to notify a physician, or when an air loss mattress should have been implemented," El Paso V cites no authority suggesting that this level of detail was required. *See Bush*, 714 S.W.3d at 543 (report need only identify specific conduct questioned and provide basis to conclude claim has merit); *id*. at 543–44 (threshold report is measured under "lenient standard" and need not "marshal all the plaintiff's proof"); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630–31 (Tex. 2013) ("[A] [§ 74.351] expert report does not require litigation-ready evidence. Rather, 'to avoid dismissal . . . [t]he report can be informal . . . [and] does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.'") (citing *Am. Transitional Care Ctrs. of*

---

[1] *See Watson v. Good Shepherd Med. Ctr.*, 456 S.W.3d 585, 589 (Tex. App.—Texarkana 2015, pet. denied) (noting that the fundamental distinction between a hospital and a nursing home is that the latter provides long-term care).

*Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)).

As to breach of the standard of care, Stinson opines that "because of her pressure injuries and physical condition[,] [Ms. Reyes] should have had daily assessments and evaluations of her skin and how the pressure injuries were progressing," yet "[n]ot only did she not have daily assessments and evaluations but there is no indication that the recommended treatment and standard of care was implemented."

### B. Dr. Dominguez

Appellants contend that Dominguez is unqualified because he "is currently a family medicine physician" and "does not offer any factual basis for having experience, knowledge, or training regarding the care of residents in a nursing home or as to the prevention, development, or treatment of pressure injuries in a nursing home." In addition, El Paso V maintains Dominguez's opinions are conclusory because he "[i]mpermissibly [i]ncorporated Ms. Stinson's [c]onclusory [o]pinions" and does not state "what constitutes proper policies to prevent [the] injuries incurred" or "what proper prevention or treatment would have looked like or why the pressures injuries were avoidable." We disagree.

As to his qualifications, Dominguez states in his report that he "ha[s] practiced family medicine for over 27 years in various settings, including . . . skilled nursing facilities." Further, Dominguez states he "ha[s] seen patients like Mrs. Estela Reyes during [his] career," "ha[s] experience managing these patients," and thus "[is] familiar with the accepted standards of medical care for diagnosing, treating, and caring for the conditions involved in this case."

In opining on the standard of care and how it was breached, Dominguez does, as El Paso V contends, rely in part on Stinson's opinions. However, as discussed above, Stinson's opinions have not been shown to be conclusory, e.g., as to Ms. Reyes not having been provided daily skin assessments. Further, an expert may rely on another expert's opinion as to one or more elements

7

of a claim.[2] As to causation, Dominguez opines that Pebble Creek Nursing Center "fail[ed] to follow standard protocols to prevent the development of pressure injuries," e.g., daily skin assessments, and when the injuries were noted, it "failed to adequately treat the wounds, thereby hindering the healing process." El Paso V cites no authority suggesting that this opinion was inadequate to meet § 74.351's lenient standard, under which a threshold expert report need only "inform[] the defendant of the specific conduct called into question" and "provide[] a basis for the trial court to conclude the claim[] ha[s] merit." *Bush*, 714 S.W.3d at 543.

### C. Claims against Creative Solutions and Honor X

Creative Solutions and Honor X argue that they "do not own or operate Pebble Creek and would have a separate and distinct standard of care from the licensed operator," thus Reyes was "required to give fair notice . . . as to the standard of care each [of them] owed . . . and how each [of them] breached that standard[.]" However, in his live pleading, Reyes asserts a vicarious liability claim against all defendants.[3] As the Texas Supreme Court has explained, "when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, a[] [threshold] expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory," and "if any liability theory has been adequately covered, the entire case may proceed." *Certified EMS*, 392 S.W.3d at 632. Further, in such cases, a threshold expert report need not "mention [the defendant alleged to

---

[2] *See Methodist Hosp. v. Addison*, 574 S.W.3d 490, 502 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("A medical expert . . . may rely on the reports and opinions of others in forming his own causation opinion."); *Kelly v. Rendon*, 255 S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("While a nurse's report, standing alone, is inadequate to meet the requirements of the statute as to medical causation, nothing in the health care liability statute prohibits an otherwise qualified physician from relying on a nurse's report in the formation of the physician's own opinion."); *see also Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) ("[O]ne expert need not address the standard of care, breach, and causation; multiple expert reports may be read together to determine whether these requirements have been met.").

[3] *See CHI St. Luke's Cmty. Health Services—The Woodlands Hosp. v. Smith*, No. 09-25-00044-CV, 2025 WL 2350883, at *9 (Tex. App.—Beaumont Aug. 14, 2025, no pet.) (mem. op.) ("In determining the adequacy of an expert report, a court reviews the pleadings to determine the claims alleged[.]").

be vicariously liable] or implicate its behavior." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam). "The conduct by the hospital on which the agency relationship depends is not measured by a medical standard of care. These are principles of agency law on which no expert report is required." *In re CHCA Conroe, L.P.*, No. 09-04-453 CV, 2004 WL 2671863, at *1 (Tex. App.—Beaumont Nov. 23, 2004, orig. proceeding) (mem. op.) (per curiam).[4]

Here, Stinson's and Dominguez's reports address conduct for which Creative Solutions and Honor X are alleged in Reyes's pleading to be vicariously liable, i.e., acts "performed by the agents, representatives, servants, and/or employees of Defendants" "in furtherance of the duties of their agency, representation, employment, and/or official duties." As discussed above, Appellants have not shown that the reports are inadequate with respect to such alleged conduct. We therefore conclude that the trial court did not abuse its discretion in allowing the entire case against Creative Solutions and Honor X as well as El Paso V to proceed past the threshold expert report stage.[5]

## V. CONCLUSION

Because Appellants have not shown that the trial court abused its discretion in denying their motions to dismiss and overruling their objections to the threshold expert reports provided by Reyes, i.e., have not shown that the reports fail to reflect a good faith effort to comply with § 74.351, we affirm the trial court's order denying the motions and overruling the objections.


LISA J. SOTO, Justice

---

[4] *See also Young v. Med. Imaging Diagnostic Associates, Inc.*, No. 13-12-00219-CV, 2012 WL 8013979, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2012, no pet.) (mem. op.) ("When a plaintiff's claim against a hospital . . . is based on the conduct of an employee through the doctrine of respondent superior, the expert report need not . . . include an opinion about how the employee was acting in the course and scope of employment[.]") (citing *RGV Healthcare Assocs., Inc. v. Estevis*, 294 S.W.3d 264, 273 (Tex. App.—Corpus Christi 2009, pet. denied)); *Id.* ("A medical expert is not qualified to render an opinion on the legal issue of vicarious liability.").

[5] At this preliminary stage, we do not make any statement as to the merits of the vicarious liability claims asserted by Reyes. We merely conclude that Appellants have not shown that Stinson's and Dominguez's reports are inadequate to support such a claim, if valid.

February 26, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.