Opinion to Issue: November 19, 2009                                                                                                                                                                                                                                                                                                    



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00161-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



AARON LEE
WOOFTER, M.D.; DANNY CHU, M.D.; JONATHAN

CHARLES
DANIEL, M.D.; AND FRED MILTON SUTTON, JR., M.D., Appellants

 

V.

 

MOLLY
BENITEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF

THE ESTATE OF
ANDREA JIMENEZ ISLAM, DECEASED, AND KAZI

M. ISLAM,
Appellees

 

 



On Appeal from Probate Court No. 1

Harris County, Texas

Trial Court
Cause No. 362,807-401

 

 



MEMORANDUM opinion

In their sole issue on this
interlocutory appeal, Doctors Aaron Lee Woofter, M.D., Danny Chu, M.D.,
Jonathan Charles Daniel, M.D., and Fred Milton Sutton, Jr. M.D. (collectively,
“the doctors” or “appellants”) contend that the court abused its discretion
when it declined to dismiss the medical malpractice suit pending against them. 


We affirm.

Background

During the course of her chemotherapy
for tonsil cancer, Andrea Islam had difficulty eating and was becoming malnourished.
 In an attempt to alleviate these conditions, Dr.
Woofter and Dr. Sutton inserted a percutaneous
endoscopic gastrostomy (PEG) tube into Islam’s stomach but tore her
esophagus.  A barium swallow study was administered that revealed a leak and Dr.
Chu and Dr. Daniel performed surgery to repair the tear.  Islam later died of
respiratory failure. Brought by her surviving heirs (collectively, “the family”),
this medical negligence case claims Islam died of aspiration pneumonia
resulting from the barium leaking from her esophagus into adjacent tissue.

The family timely served the doctors with
the required report and curriculum vitae of their expert, Mark S. Sanders, M.D.
 The doctors objected to the sufficiency of the expert report and filed a
motion to dismiss.[1]  After the family filed a
response and a request for a 30-day extension to cure any deficiency and a
hearing was held on the matter, the doctors’ motion to dismiss was denied. 
That ruling was previously appealed to this Court, and, finding that report to
be deficient, we held that the trial court’s denial of the doctors’ challenge
to the Sanders expert report was error.  Specifically, we found that the report
failed to provide a sufficient basis for the trial court to find that Dr.
Sanders, an orthopedic surgeon, was qualified to opine on the appropriate
standards of care for gastroenterologists, Dr. Chu and Dr. Daniel, or
cardiothoracic surgeons, Dr. Woofter and Dr. Sutton.  Woofter v. Benitez,
No. 01-06-01123-CV, 2008 WL 2466223 (Tex. App.—Houston [1st Dist.] June 19,
2008, no pet.) (mem. op.). 

Following a 30-day extension, the
family submitted expert reports and curricula vitae for two new experts: Todd
Eisner, M.D. and M. Wayne Flye, M.D.  The doctors objected to the sufficiency
of these expert reports as well and filed another motion to dismiss.  After the
family filed a response and a request for a 30-day extension to cure any
deficiency, the trial court denied doctors’ motion to dismiss and this
interlocutory appeal ensued.

Discussion

Appellants assert that the trial
court abused its discretion when it found the expert reports of Drs. Eisner and
Flye to be sufficient.[2] 

I. Applicable Law

A. Standard of Review

We review all rulings on section 74.351
under an abuse of discretion standard.  Am. Transitional Care Ctrs. v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001).  A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner or without reference
to any guiding rules or principles.  See Walker v. Gutierrez,
111 S.W.3d 56, 62 (Tex. 2003).  When reviewing matters committed to the trial
court’s discretion, we may not substitute our own judgment for that of the
trial court.  Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).  A
trial court does not abuse its discretion merely because it decides a
discretionary matter differently than an appellate court would in a similar
circumstance.  See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
242 (Tex. 1985).

Although we defer to the trial
court’s factual determinations, we review questions of law de novo.  Rittmer
v. Garza, 65 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, no
pet.).  To the extent resolution of the issue before the trial court requires
interpretation of the statute itself, we apply a de novo standard. Buck v.
Blum, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

B. Chapter 74 Expert Report
Requirements

Section 74.351 imposes a threshold to prevent frivolous or
premature lawsuits from proceeding until a good-faith effort has been made to
demonstrate that at least one expert believes that a breach of the
applicable standard of care caused the claimed injury.  Wilson-Everett v.
Christus St. Joseph, 242 S.W.3d 799, 803 (Tex. App.—Houston [14th
Dist.] 2007, pet denied) (citing Murphy v. Russell, 167 S.W.3d 835, 838
(Tex. 2005); Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003)). 

In reviewing whether an expert report complies with Chapter
74, we evaluate whether the report “represents a good-faith effort” to comply
with the statute.  Strom v. Mem’l Hermann Hosp. Sys., 110 S.W.3d
216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  Although the
report does not need to marshal all of the plaintiff’s proof, it must include
the expert’s opinions on the three statutory elements—standard of care, breach,
and causation.  See Palacios, 46 S.W.3d at 878, 880; Spitzer v. Berry,
247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied) (quoting Palacios,
46 S.W.3d at 880) (stating “fair summary” is “something less than a full
statement” of the applicable standard of care, how it was breached, and how
that breach caused the injury).  In detailing these elements, the report must
provide enough information to fulfill two purposes if it is to constitute a
good faith effort.  First, it must inform the defendant of the specific conduct
that the plaintiff has called into question.  Palacios, 46 S.W.3d at 879. 
Second, it must provide a basis for the trial court to conclude that the claims
have merit.  Id.  A report that merely states the expert’s conclusions
as to the standard of care, breach, and causation does not fulfill these two
purposes.  Id.  The expert must explain the basis for his statements and
link his conclusions to the facts.  Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (citing Earle v. Ratliff, 998 S.W.2d 882, 890
(Tex. 1999)).  Furthermore, in assessing the report’s sufficiency, the trial
court may not draw any inferences, and instead must rely exclusively on the
information contained within the report’s four corners.  See Palacios,
46 S.W.3d at 878.  A report’s adequacy does not depend on whether the
expert uses any particular “magic words.”  Spitzer, 247 S.W.3d at 750
(quoting Wright, 79 S.W.3d at 53).

Medical malpractice plaintiffs must provide each
defendant physician and health care provider with an expert report within 120
days of filing suit or voluntarily nonsuit the action.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008).  A defendant may then file an objection to the
sufficiency of the report within 21 days after the date the report was served. 
See id.  A
defendant may also file a motion seeking dismissal of the claims and attorneys’
fees and costs.  See id. § 74.351(b) (providing that if sufficient
expert report not timely served in accordance with subsection (a), court shall,
on motion of affected defendant, enter order dismissing claim with prejudice with
respect to movant and awarding movant reasonable attorney’s fees and costs).  The trial court shall grant the motion only if it appears,
after hearing, that the report does not represent a good faith effort to comply
with the statutory definition of an expert report.  See id. § 74.351(1). 


An “expert report” under Chapter 74 is 

(1)     a written report 

(2)     by an expert 

(3)     that provides, as to each
defendant, a “fair summary” of the expert’s opinions as of the date of the
report regarding

(a)     applicable standards of care

(b)            
the manner in which
the care provided failed to meet the standards; and

(c)      the causal relationship between
that failure and the injury, harm, or damages claimed.  

See id.
§ 74.351(r)(6); Palacios, 46 S.W.3d at 877.  For a document to be considered an “expert report”
for the purposes of subsection 74.351(r)(6),
it must be rendered by someone qualified to testify as an expert on the
relevant medical subject area.  Hansen v. Starr, 123 S.W.3d 13, 19 (Tex.
App.—Dallas 2003, pet. denied).  

II.      Adequacy
of Expert Reports

Appellants assert that neither
the Eisner report nor the Flye report satisfy the requirements of section 74.351.


A.   Appellants’ Arguments
as to Dr. Flye

Appellants assert that Dr. Flye’s report is generally inadequate as to
all four defendant physicians because (1) it does not address the actions of
each physician individually; (2) a copy of the autopsy report relied upon by
Dr. Flye to establish causation is not attached; (3) the report does not set
forth the qualifications of the pathologist who performed the autopsy upon
which Dr. Flye relied for his causation opinions; and (4) no causation is shown
because it does not demonstrate that Islam’s life expectancy accorded her more
than a 50% chance to survive.

As to Drs. Daniel and Chu, specifically, appellants argue that Dr. Flye’s report is inadequate because (1) it
makes no allegations of a violation of a standard of care against either of
them individually; and (2) to the extent that it does address the standard of
care and causation elements, these sections of the report are conclusory as to Drs. Daniel and Chu.

Appellants also argue that the Dr. Flye report is inadequate as to Drs. Sutton and Woofter because (1) Dr. Flye is not qualified to offer opinions
regarding the standard of care for either Drs. Sutton or Woofter; (2) the
report makes no allegations of a violation of a standard of care against either
Drs. Woofter or Sutton individually or
for the procedure in which they were involved; (3) the report criticizes Dr. Woofter for a procedure in which he was not
involved; and (4) to the extent that it does address the standard of care and
causation elements, these sections of the report are conclusory as to Drs. Sutton and Woofter.

B.   Qualifications of Experts

Appellants argue that Dr. Flye, a thoracic surgeon, is not qualified
to opine as to the applicable standard of care for gastroenterologists Dr. Sutton’s and Dr.
Woofter’s endoscopic placement of a PEG tube.

An expert providing opinion
testimony regarding whether a physician departed from the accepted standards of
care must satisfy the requirements set forth in section 74.401.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(5)(A).  Section 74.401 provides in pertinent part: 

(a)     In a suit involving a health care
liability claim against a physician for injury to or death of a patient, a
person may qualify as an expert witness on the issue of whether the physician
departed from accepted standards of medical care only if the person is a
physician who:

(1)  is practicing medicine at the time
such testimony is given or was practicing medicine at the time the claim arose;

(2)  has knowledge of accepted standards
of medical care for the diagnosis, care, or treatment of the illness, injury,
or condition involved in the claim;  and

(3)  is qualified on the basis of
training or experience to offer an expert opinion regarding those accepted
standards of medical care.

Tex. Civ. Prac.
& Rem. Code Ann. § 74.401(a) (Vernon Supp. 2008).

An
expert testifying in a medical malpractice case need not be a specialist in the
particular branch of the profession for which testimony is offered; the statute
setting out the requisite qualifications focuses not on the defendant doctor’s
area of expertise, but on the condition involved in the claim.  Blan v. Ali,
7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Where
two fields of medicine overlap, and a procedure is common to more than one
field, a physician in one of these fields may opine as to the standard of care
for that procedure in the other field.  See Keo v. Vu, 76 S.W.3d 725,
732 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).   A trial court’s decision on whether a physician is
qualified to offer an expert opinion in a health care liability claim is
reviewed under an abuse of discretion standard.   Moore v. Gatica, 269
S.W.3d 134, 139 (Tex. App.—Fort Worth 2008, pet. denied).

Dr.
Flye, who is board certified in thoracic surgery, is currently Chief of
Thoracic Surgery at St. Louis Veterans Administration Hospital, St. Louis,
Missouri, and Chief of Surgery, Department of Surgery, Saint Louis Connect Care
Health Systems, St. Louis, Missouri.  Appellants do not argue that Dr. Flye is not qualified to opine as to the
applicable standard of care for cardiothoracic surgeons Drs. Daniel and Chu, nor do they argue that Dr. Flye is not qualified to offer an opinion
as to the causal relationship between the injury, harm, or damages claimed and
the alleged departure from the applicable standard of care with regard to any
of the four defendant physicians.  They do, however, challenge Dr. Flye’s qualifications to opine as to the
applicable standard of care for gastroenterologists Drs. Sutton and Woofter with regard to the placement of a PEG
tube.

In
his report, Dr. Flye states in pertinent part:  

I am familiar with the standard of care for the
placement of a PEG tube, repair of an esophageal perforation and the use of a
barium swallow…I have placed a PEG tube hundreds of times.  I am knowledgeable
as to the standard of care for surgeons for the care of patients such as Mrs.
Islam.  

Appellants argue that Dr. Flye’s
statement that he had “placed a PEG tube hundreds of times” was insufficient
because Dr. Flye was required to
affirmatively state in his report that his experience placing percutaneous endoscopic gastrostomy tubes included placing
them endoscopically, rather than
surgically.  The family argues that Dr. Flye did not need to go into such detail in his report. 
Appellees further argue that the allegations against Drs. Woofter and Sutton
pertain to their decision to use a PEG tube and the manner in which the doctors
inserted it, and, as a thoracic surgeon who has placed a PEG “hundreds of times,”
Dr. Flye
is more than sufficiently qualified to opine as to these basic thoracic
issues.  According to his
curriculum vitae, Dr. Flye is a member of the American Gastroenterological
Association and he has experience with endoscopic and laparoscopic procedures. 
See Lively v. Blackwell, 51 S.W.3d 637, 639 n.1 (Tex. App.—Tyler
2001, pet. denied) (noting that laparoscopic surgery belongs to the
broader field of endoscopy).  In light of these factors, we conclude that the
trial court did not act without reference to guiding rules or principles when
determining that Dr. Flye was qualified to opine on the standard
of care for gastroenterologists Drs. Sutton
and Woofter.  See Broders v. Heise,
924 S.W.2d 148, 153 (Tex. 1996). 

C.   Standard of Care and
Breach

Appellants also contend that Dr. Flye’s report is inadequate because it
fails to address the actions of each physician individually; it does not allege
that any of the four defendant physicians violated a standard of care; and, to the extent that it does address the
standard of care element, these portions of the report are conclusory as to all
four defendant physicians.  

In
his report, Dr. Flye divides the four defendants into two groups: Drs. Woofter
and Sutton (the gastroenterologists who placed the PEG tube and perforated
Islam’s esophagus) and Drs. Daniel and Chu (the thoracic surgeons who repaired
the esophageal perforation and administered the barium swallow study).  With
respect to Drs. Woofter and Sutton, Dr. Flye states:

The standard of care for Dr. Woofter and Dr. Sutton in
the situation described above required them to not perforate [Andrea Islam’s]
esophagus during the attempted PEG placement.  Specifically, it was the (sic)
breach of the standard of care to perforate the esophagus.  Additionally, the
doctors Woofter and Sutton were aware that Mrs. Islam suffered from squamous
cell carcinoma of the right tonsil and had undergone chemotherapy and radiation
treatment prior to the attempted PEG placement.  Because of the cancer of the
esophagus, Drs. Woofter and Sutton should not have attempted to place the PEG
tube. Unfortunately, they did proceed.  Drs. Woofter and Sutton should have
used extreme caution during the procedure so as not to perforate her esophagus.
It is my opinion, based upon a reasonable degree of medical probability, that
in perforating Mrs. Islam’s esophagus, Dr. Woofter and Dr. Sutton breached the
standard of care.  This breach was a proximate cause of Mrs. Islam’s death on
August 15, 2005.

With respect to Drs. Daniel and Chu, Dr. Flye opines, in pertinent part:

It is my opinion, based upon a reasonable degree of
medical probability, that in failing to repair Mrs. Islam’s esophageal
perforation, Dr. Daniel and Dr. Chu breached the standard of care. 
Additionally, it is my opinion, based upon a reasonable degree of medical probability,
that in ordering a barium swallow, Dr. Daniel and Dr. Chu breached the standard
of care.  These breaches were the proximate causes of Mrs. Islam’s death on
August 15, 2005.

It is true that Dr. Flye incorrectly states that “It is my
opinion that Dr. Woofter and his surgical team deviated from the standard of
care in the treatment of Mrs. Islam” when discussing the use of the barium
swallow, when he should have said Daniel and Chu.[3] 
However, it is also apparent from the four corners of the report that Dr. Flye understood that Drs. Daniel and Chu were involved in the decision to administer the barium swallow study, not Drs. Woofter
and Sutton.  In any event, Dr. Flye’s
other statements make it clear that he has informed Drs. Woofter and Sutton of
their specific conduct that appellees have called into question—attempting
placement of a PEG tube and the resulting
esophageal perforation.  See Palacios, 46 S.W.3d at 879 (stating
that expert report must inform defendant of specific conduct plaintiff has
called into question and provide basis for trial court to conclude that claims
have merit).  Dr. Flye has also informed Drs. Chu and Daniel of their specific
conduct that appellees have called into question—the improper repair of
the esophageal perforation and the ordering of a barium swallow.  See id.


The
doctors rely upon Taylor v. Christus Spohn Health System Corp., Rittmer
v. Garza, Doades v. Syed, and In re Boone to support their
contention that Dr. Flye’s report is inadequate as to the standard of care and
breach because it collectively refers to groups of doctors rather than setting
forth individual standards as to each defendant physician.  See Taylor v. Christus Spohn Health Sys. Corp., 169 S.W.3d 241, 243 (Tex. App.—Corpus
Christi 2004, no pet.); Rittmer v. Garza, 65 S.W.3d 718, 721 (Tex.
App.—Houston [14th Dist.] 2001, no pet.); Doades v. Syed, 94 S.W.3d 664,
671–72 (Tex. App.—San Antonio 2002, no pet.); In re Boone, 223 S.W.3d
398, 405–06 (Tex. App.—Amarillo 2006, no pet.).  We find each of
these cases distinguishable.

In
Taylor, the defendants included a hospital, a doctors’ association, an
emergency room physician, and a cardiologist, and the expert failed to state
what each defendant should have done to meet the standard of care and failed to
do, and how the failure led to the patient’s death.  Taylor, 169
S.W.3d at 245–46.  In Doades, the expert report combined the standard of
care, breach, and causation into a general assertion that that treating
physician and nurse “[failed] to properly monitor Doades and . . . [failed] to
timely identify and properly treat [his] condition,” a statement the court of
appeals deemed conclusory.  Doades, 94 S.W.3d 664, 668, 671–72.  Here,
Flye’s report comments on the failure of a uniform duty owed by two doctors to
the same patient.  And, also unlike Taylor and Doades,
Flye specifically names the individual doctors, identifies their specific
negligent actions, and discusses their failures according to the standard of
care that group of doctors owed to Islam.

In
Rittmer, the plaintiff conceded that her report failed to set out
specific standards of care for two distinct specialists—an oncologist
performing a mastectomy and a plastic surgeon performing reconstructive
surgery.  Rittmer, 65 S.W.3d at 722.  Again, this is distinct from
Dr. Flye’s clear articulation of two separate standards of care—one for Drs. Woofter and Sutton (the
gastroenterologists who placed the PEG tube and perforated Islam’s esophagus)
and the second for Drs. Daniel and Chu (the thoracic surgeons who repaired the
esophageal perforation and administered the barium swallow study).  

Appellants also argue that,
while it may be acceptable to group defendants under certain circumstances, the
expert must establish that the same standard of care applies to the physicians
he groups together.  In re Boone, 223 S.W.3d at 405–06.  In
re Boone, however, does not stand for the proposition that the expert must
expressly state that the same standard applies to a group of defendants. 
In that case, the expert merely grouped Boone, a physician’s assistant,
together with physicians and a medical association, and discussed one standard
of care applicable to the group.  The court concluded that “[w]hile relators
may disagree with [the expert’s] opinions concerning the standard of care
applicable to each of those individual defendants, the report contains a fair
summary of his opinions and adequately informs them of the specific conduct
called into question.”  Id. (citing Palacios, 46 S.W.3d at 879-80). 


The same can be said for the
present case.  While appellants may disagree with Dr. Flye’s opinions concerning the standard of care
applicable to each individual defendant, his report contains a fair summary of
his opinions and adequately informs each appellant of his specific conduct that
is being called into question.  Palacios, 46 S.W.3d at 879–80.  This is
sufficient to show a “good faith effort” to comply with section 74.351.

The doctors also argue that Dr. Flye’s statements with regard
to the standard of care are conclusory as to all four defendant physicians
because Dr. Flye does not
inform the defendants of what they should have done, but did not do. On the
contrary, Dr. Flye informs
Drs. Woofter and Sutton that, based upon Islam’s medical condition, namely her
cancer of the esophagus, they should have used an NG tube rather than a PEG
tube and, having decided to insert a PEG tube, they should have exercised
extreme caution so as not to have perforated Islam’s esophagus.  Dr.  Flye also informs Drs. Daniel
and Chu that, in his opinion, they should not have ordered the barium study
after Islam’s surgery and Dr. Flye proceeds to set forth a list of acceptable
alternative procedures.  Having done so, Dr. Flye has sufficiently informed
each of the defendants of what they should have done, but did not do.  This is
sufficient to show a “good faith effort” to comply with section 74.351.

D.   Causation

Appellants assert that Dr. Flye’s
report is conclusory as to causation with respect to all four defendant
physicians.  The causation requirement of an expert report in this context must
provide information linking the defendant’s purported breach of the standard of
care to the plaintiff’s injury.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); see also Arkoma Basin
Exploration Co. v. FMF Assocs. 1990-A, Ltd., 249 S.W.3d 380, 389 n.32 (Tex.
2008) (defining conclusory
as “[e]xpressing a factual inference without stating the underlying facts on
which the inference is based”).  Dr. Flye’s report sets forth a chain of
events, involving breaches of the standard of care by each of the defendant
physicians, which resulted in Islam’s death.  This is sufficient under section
74.351.  See Patel v. Williams, 237 S.W.3d 901, 905–06 (Tex. App.—Houston [14th Dist.] 2007, no pet.). 

Appellants, citing to Jones v.
King, 255 S.W.3d 156 (Tex. App.—San Antonio 2008, pet. denied), argue that
Flye’s report is conclusory because he did not attach the autopsy report or
qualifications of the pathologist who performed the autopsy upon which his
report relied for causation.  The author of the report in Jones relied
upon the opinion and documentation of another physician in addressing causation
but did not qualify the other physician or attach documentation from the other
physician.  The court of appeals noted that “the report’s adequacy must be judged
solely by its four corners” and rejected the reliance on the other physician’s alleged,
but absent, documentation to satisfy the causation requirement of section 74.351. 
The family contends that Dr. Flye was not relying upon the autopsy report to
prove causation and that although he refers to the report’s findings, this mere
“observation does not substitute for Dr. Flye’s professional opinion.”  Courts
have held that, in addressing causation, a reporting physician may rely on the
opinions of other individuals who have rendered reports or diagnoses.  See
Kelly v. Rendon, 255 S.W.3d 665, 676 (Tex. App.—Houston [14th Dist.] 2008,
no pet.) (noting that “nothing in the health care liability statute prohibits
an otherwise qualified physician from relying on [another opinion] in the
formation of the physician’s own opinion”); see also generally Tex. R. Evid. 703 (stating an expert
may base his opinion on facts or data that is not admissible in evidence if it
is of type reasonably relied on by experts in that particular field).  Dr. Flye
stated that Islam’s hospital records demonstrated that Islam developed
pneumontitis and aspiration pneumonia, medical conditions from which she never
recovered.  The records informed his opinion that Islam’s death resulted from
the barium leaking into her lungs and surrounding tissue, causing her to
develop pneumontitis and subsequently die from respiratory failure. 
Accordingly, it was not an abuse of discretion for the trial court to find Dr. Flye’s
opinions on causation to be sufficient under section 74.351, a gate-keeping
statute intended to weed out frivolous claims.  

The doctors also allege that Dr. Flye’s
report is insufficient as to causation because he failed to show Islam’s
limited life expectancy allowed her a greater than 50% chance to survive her
cancer, citing Flores v. Eakin, No. 03-07-00477-CV, 2008 WL 3877684
(Tex. App.—Austin 2008, no pet.) (mem. op.).  Flores involved an appeal
from a motion for summary judgment granted in favor of appellee physicians. 
Without citing authority, the doctors argue that even though Flores
involved a motion for summary judgment, its reasoning should be applied to §
74.351 expert reports.  Summary judgments, however, are subject to an entirely
different standard than the one presented in this case.  Whereas a motion to
dismiss seeks to demonstrate that a plaintiff has not satisfied the procedural
requirements of Chapter 74, a motion for summary judgment seeks to demonstrate
that the substance of the claim lacks merit.  See Smalling v. Gardner, 203 S.W.3d 354, 367 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); see
also Apodaca v. Russo, 228 S.W.3d 252, 255 (Tex. App.—Austin 2007, no pet.)
(expert report is not required to prove defendant's liability, but rather to
provide notice of what conduct forms the basis for plaintiff’s complaints);
Palacios, 46 S.W.3d at 879 (“to avoid dismissal, a plaintiff need not
present evidence in the report as if it were actually litigating the merits.  The
report can be informal in that the information in the report does not have to
meet the same requirements as the evidence offered in a summary-judgment
proceeding or at trial.”).  We therefore find Flores inapplicable.

The two-fold purpose of an expert
report under section 74.351 is to inform the defendant
of the specific conduct the plaintiff has called into question, and to provide
the trial court with a basis to determine whether the plaintiff's claims have
merit.  Patel, 237 S.W.3d at 906.  Pursuant to this standard, we conclude
that Dr. Flye’s report sufficiently addresses the element of causation, linking
the alleged breaches of the standard of care to Islam’s death—aspiration
pneumonia that developed after barium leaked out of Islam’s improperly repaired
esophagus into her lungs and adjacent tissue.  Therefore, keeping in mind that section
74.351 expert reports are a preliminary method to show
a plaintiff has a viable cause of action that is not frivolous or without
expert support, we hold the trial court acted within its discretion in
concluding that Dr. Flye’s report complied with section 74.351’s
causation requirement as to all four defendants.

Having concluded that the trial court acted within its
discretion in finding Dr. Flye’s report sufficient under the statute, we need
not address the sufficiency of Dr. Eisner’s report.  See generally Kelly,
255 S.W.3d at 675–76 (when claimants submitted multiple reports from several
doctors and two nurses, sufficiency of reports as to each appellant would be
judged in aggregate, and sufficiency of each individual report was not
determinative); Packard v. Guerra, 252 S.W.3d 511, 525–26 (Tex.
App.—Houston [14th Dist.] 2008, pet. denied) (each individual report need not
be adequate; instead, adequacy is based on aggregate content of all reports). 
We conclude, therefore, that the court below did not abuse its discretion in
denying appellants’ motion to dismiss. 

We overrule appellants’ sole issue.

CONCLUSION

We affirm the trial court’s order denying appellants’ motion to dismiss.

 

 

 

 

 

                                                          Jim
Sharp

                                                          Justice


 

Panel consists of Justices Jennings,
Higley, and Sharp.

 

 

 









[1]           See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon
Supp. 2008) (requiring health care liability claimants to serve expert reports
no more than 120 days after original petition filed and defendant to file and
serve objections to sufficiency of expert report by 21st day after report
served, or else objections waived); id. § 74.351(b) (providing that if
sufficient expert report not timely served in accordance with subsection (a),
court shall, on the motion of affected health care liability defendant, enter
order dismissing claim with prejudice with respect to movant and awarding
movant reasonable attorney’s fees and costs); id. § 74.351(l) (stating
that a court “shall grant a motion challenging the adequacy of an expert report
only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert
report in Subsection (r)(6)”).





[2]           Specifically, appellants argue that

(1)  neither report addresses the actions of each physician
individually; 

(2)  neither report included the qualifications of the
pathologist who performed the autopsy nor the autopsy report upon which he
relied to establish causation;

(3)  neither expert report shows Islam’s limited life
expectancy allowed her a greater than 50% chance to survive her cancer, thereby
failing to show causation;

(4)  Dr. Eisner’s report is inadequate as to Dr. Sutton and
Dr. Woofter because

(a) it is critical of a procedure in which neither Dr.
Sutton nor Dr. Woofter were involved;

(b) it makes no allegations of a violation of a
standard of care against either Dr. Woofter or Dr. Sutton; and

(c) the standard of care and causation elements of the
report are conclusory as to Dr. Sutton and Dr. Woofter;

(5)  Dr. Eisner’s report is inadequate as to Daniel and Chu because

(a) neither Dr. Daniel nor Dr. Chu were named in it;

(b) Dr. Eisner is not qualified to offer opinions
regarding the standard of care for either Dr. Daniel or Dr. Chu;

(c) it makes no allegations of a violation of a
standard of care against either Dr. Daniel or Dr. Chu; and 

(d) the standard of care and causation elements of the
report are conclusory as to Dr. Daniel and Dr. Chu;

(6)  Dr. Flye’s report is inadequate as to Sutton and Dr. Woofter
because 

(a) Dr. Flye is not qualified to offer opinions
regarding the standard of care for either Dr. Sutton or Dr. Woofter;

(b) it makes no allegations of a violation of a
standard of care against either Dr. Woofter or Dr. Sutton individually or for
the procedure in which they were involved;

(c) it criticizes Dr. Woofter for a procedure in which
he was not involved; and 

(d) the standard of care and causation elements of the
report are conclusory as to Dr. Sutton and Dr. Woofter; and

(7)  Dr. Flye’s report is inadequate as to Dr. Daniel and Dr.
Chu because

(a) it makes no allegations of a violation of a
standard of care against either Dr. Daniel or Dr. Chu individually;

(b) the standard of care and causation elements of the
report are conclusory as to Dr. Daniel and Dr. Chu.





[3]           Appellants argue that because Dr. Flye did
not identify the members of Dr. Woofter’s “surgical team,” his report does not
address Drs. Sutton, Daniel or Chu in reference to the barium study.  While
this is true with regard to Sutton, it is certainly not the case as to Drs. Daniel
and Chu.  Dr. Flye clearly states elsewhere in his report that “in ordering a
barium swallow, Dr. Daniel and Dr. Chu breached the standard of care.”  Dr.
Sutton also argues that because he is not named in the report with respect to
the barium study that Dr. Flye’s expert report is “no report” to him.  This
argument, however, ignores that fact that Dr. Flye criticizes Dr. Sutton
elsewhere in the report when discussing the procedure Sutton was actually
involved in—the insertion of the PEG tube.